(May 29, 2007)

■ AMERICAN RE-INSURANCE COMPANY, Respondent, v UNITED STATES FIDELITY & GUARANTY COMPANY et al., Appellants, and EXCESS AND CASUALTY REINSURANCE ASSOCIATION et al., Respondents, et al., Defendants. [837 NYS2d 616]—

Order, Supreme Court, New York County (Richard B. Lowe, III, J.), entered January 10, 2006, which denied the motion of defendants-appellants United States Fidelity & Guaranty Company (USF & G) and St. Paul Fire & Marine Insurance Company (collectively, USF & G) to vacate an order of the Special Referee, dated December 4, 2005, requiring them to produce documents and provide testimony, without regard to the attorney-client and work product privileges, related to the settlement and bill preparation in an underlying action between USF & G and its insureds, and directed that compliance with the order of the Special Referee proceed forthwith, modified, on the law, the motion granted to the extent that respondents may seek documents and testimony regarding presentation of the reinsurance claim as defined by the document request only to the extent that the discovery relates to disclosures made during the EBT testimony of James Kleinberg, and otherwise affirmed, without costs.

From 1948 to 1960, USF & G issued insurance policies to Western Asbestos Company, the predecessor-in-interest to Western MacArthur Company, which was in the asbestos busi-

ness. USF & G entered into written reinsurance treaties with plaintiff American Re-Insurance Company (American Re) and defendant Excess Casualty Reinsurance Association (ECRA),[1] covering Western's losses for the period 1956 to 1962 (collectively, the Reinsurers).

Western MacArthur became mired in a mass tort litigation involving personal injury claims from asbestos products and filed an insurance claim with USF & G. After USF & G denied coverage, Western MacArthur sued in California state court seeking a declaration that it was entitled to insurance coverage from USF & G and that USF & G's denial of coverage was in bad faith. On June 3, 2002, after extensive negotiations, Western MacArthur settled the underlying personal injury action. As part of the settlement, USF & G agreed, inter alia, to pay approximately $975 million for ultimate distribution to the asbestos claimants, and Western MacArthur would file for bankruptcy. The parties also stipulated that USF & G issued policies to Western Asbestos from 1948 to 1960. However, despite the 12-year coverage period, USF & G allocated settlement payments for all claimants to only one policy period—the final year—covering the period July 1959 to July 1960.

The United States Bankruptcy Court for the Northern District of California approved the settlement. Western Mac-Arthur assigned to the bankruptcy fund its bad faith claims against USF & G, for which the court found substantial supporting evidence. However, the court did not assign a specific percentage of the settlement amount to the bad faith claims.

Thereafter, in November 2002, USF & G informed the Reinsurers of the settlement of the underlying action and presented them with a bill ultimately amounting to approximately $400 million in reinsurance claims. The bill allocated all of the underlying asbestos claims to the last treaty year. The Reinsurers requested information regarding Western's claimed loss, but USF & G did not respond. Thirteen days after presenting its claim, USF & G sued American Re for nonpayment in federal district court in California, but the lawsuit was dismissed for lack of subject matter jurisdiction. In December 2002, American Re commenced the instant action seeking a declaration of its rights under the reinsurance agreements, as well as the rights of the ECRA pool members.

Thereafter, the Reinsurers served discovery requests seeking documents related to the settlement negotiation and

---

**1.** ECRA is a pool of insurance companies that collectively agreed to provide 50% of the reinsurance to USF & G. American Re provided the other 50%.

agreement.[2] USF & G objected, claiming that the request was burdensome, vague and ambiguous, and that the requested documents were protected by, inter alia, the attorney-client and work product privileges. USF & G later asserted that the "follow-the-fortunes" doctrine and settlement privilege barred disclosure. The Referee ordered disclosure, and, by order entered December 9, 2004, Supreme Court upheld that determination. On appeal, this Court affirmed (19 AD3d 103 [2005]).

Thereafter, by letter dated October 20, 2005, defendant TIG Insurance Company of Colorado, a member of the ECRA pool, requested that the Referee allow production of the following documents:

"All communications concerning USF & G's presentation of the reinsurance claim, including those related to: allocation to 1959, application of the 'all sums' rule, application of the 'non-accumulation' rule, decision to treat each individual injury as a separate 'accident,' when and how to inform the reinsurers of the settlement, and when and how to inform the reinsurers of the cession.

"All settlement assessments, including all injury assessments, case projections, claim evaluations and analyses of USF & G's liability for the Western MacArthur claims, (i) performed after December 1, 2001, and/or (ii) shared with the individuals involved in the negotiation of the settlement and/or presentation of the reinsurance claim, regardless of when such assessments were undertaken."

In its written submission, TIG claimed that the Reinsurers were entitled to full disclosure of the requested documents, because even if privileged, the information was "squarely at issue" and a substantial need therefore existed. Apparently, USF & G resisted disclosure based on attorney-client and work product privileges.[3] In a two-page ruling, the Referee granted TIG's

---

2. In particular, the Reinsurers sought all drafts of the settlement agreement; all documents relating to any analyses, discussions, assessments, evaluations of or comments on the settlement agreement or any draft; all documents relating to the negotiation and allocation of the settlement; all documents relating to past costs that were discharged under the settlement agreement; all documents relating to future defense costs that were discharged under the settlement agreement; all documents relating to future liability costs that were discharged under the settlement agreement; all documents relating to communications with, to or from Reinsurers relating to the settlement agreement or its negotiation.

3. Upon review of the 2500-page record on appeal, there does not appear to be a written response by USF & G to this request. This characterization of USF & G's opposition comes from the Referee's order.

motion.[4] The Referee found that USF & G shared a common interest with the Reinsurers, and had placed at issue "the assertions/claims and underlying supporting and/or non-supporting information laden privileged documents and testimony." Accordingly, the Referee ruled that USF & G's assertions of privilege did not bar disclosure.

Because Supreme Court would not allow any motions without its express permission, USF & G wrote a letter requesting leave to move to vacate the Referee's order. Supreme Court directed the parties to appear for a conference at which the court stated its intention to affirm the Referee's order. Since USF & G intended to appeal, the court allowed the attorneys to make a record *after which* the court directed USF & G to move by order to show cause to vacate the Referee's order. Both sides would be allowed to submit written papers, but there would be no oral argument and no reply. After the parties submitted their papers, the court would "attach a written decision" and the parties could then appeal.[5]

USF & G submitted its motion consisting of counsel's 12-paragraph affirmation and 50 exhibits comprising over 500 pages. TIG submitted its opposition consisting of 91 exhibits comprising almost 1800 pages. Defendant Excess and Treaty Management Corp. and American Re joined in TIG's submissions. Although the court refused to allow USF & G to submit a reply, USF & G submitted a letter requesting that the court consider a supplemental affirmation offered solely to add four documents to the record.[6] The court denied the request because

---

**4.** Although the ruling recites that it was issued "[u]pon review and consideration of the parties' respectively asserted (oral and written) positions," it appears that there was no oral argument on the motion.

**5.** Although none of the parties press any claims on this appeal relating to this highly unorthodox method of motion practice, we must note and disapprove of the court's approach. Supreme Court appears to have first rendered a decision, then to have allowed oral argument and then the submission of motion papers. Even assuming that Supreme Court did consider the parties' oral arguments and written submissions before deciding to affirm the Referee's order, the court's approach is not consistent with a fair and reasoned decision-making process. Moreover, it also appears that the court permitted the parties to submit papers solely to create an appellate record and after it had prematurely reached a decision.

**6.** In particular, USF & G requested leave to submit two discovery orders rendered in the underlying coverage action, an appellate brief from the appeal of an earlier discovery order in this action, and deposition testimony of a witness who had been deposed after USF & G submitted its order to show cause but before the Reinsurers had submitted their response papers, such that the Reinsurers were able to refer to the testimony in their response. While not an issue on appeal, we again express our disapproval of the way motion practice

USF & G had not requested permission to file a reply prior to submitting its motion.

Supreme Court rendered a written decision upholding the Referee and concluding that for three reasons the Reinsurers were entitled to "pierce[ ]" the attorney-client and work product privileges asserted by USF & G: (1) the Reinsurers had a substantial need for the information sought; (2) USF & G and the Reinsurers share a common interest; and (3) by asserting its claim against the Reinsurers, USF & G had placed privileged matter "at issue."

## Substantial Need

On appeal, USF & G argues that substantial need was not briefed by USF & G or TIG before Supreme Court, and the Referee did not address this theory in his order. However, in the letter request submitted to the Referee, TIG specifically stated that "a substantial need" exists for production of the requested documents. In any event, regardless of whether the issue was sufficiently advanced by the Reinsurers or addressed by the court, substantial need has no application to whether the documents and testimony the Reinsurers seek are subject to discovery. The only category of potential materials that is subject to disclosure based on substantial need is trial preparation materials (*see* CPLR 3101 [d] [2]; *Spectrum Sys. Intl. Corp. v Chemical Bank*, 78 NY2d 371, 376-377 [1991]). No such materials are sought.

## Common Interest

USF & G contends that Supreme Court erred in allowing disclosure based on common interest. Specifically, USF & G argues that the common interest doctrine is not available where the parties are in an adversarial position. Notably, American Re does not join the remaining Reinsurers' argument that the parties share a common interest that requires disclosure. Assuming no common interest, all Reinsurers, except American Re, alternatively argue that USF & G waived any privilege by disclosing privileged communications.

---

was conducted on this discovery issue. Three of these documents were subject to judicial notice (*see Casson v Casson*, 107 AD2d 342, 344 [1985], *appeal dismissed* 65 NY2d 637 [1985]; *Rossbach v Rosenblum*, 260 App Div 206, 210 [1940], *affd* 284 NY 745 [1940]; Prince, Richardson on Evidence § 9-301 [Farrell 11th ed]). With respect to the last document, fairness dictated either (1) disregarding the deposition testimony taken after USF & G submitted its papers—as that testimony was not part of the record before the Referee or Supreme Court, or (2) allowing USF & G to submit deposition excerpts in reply to the Reinsurers' opposition.

As a general rule, "there is no automatic waiver of the attorney-client privilege merely because [the parties] have a 'common interest' in the outcome of a particular issue" (*North Riv. Ins. Co. v Philadelphia Reins. Corp.*, 797 F Supp 363, 367 [D NJ 1992]; *see also Gulf Ins. Co. v Transatlantic Reins. Co.*, 13 AD3d 278, 280 [2004]). Indeed, "the fact that an attorney's services for a client benefitted a third party does not establish an attorney-client relationship" (*see United States Fire Ins. Co. v Phoenix Assur. Co. of N.Y.*, Sup Ct, NY County, Aug. 18, 1992, Moskowitz, J., Index No. 7712/91, *affd for reasons stated* 193 AD2d 559 [1993]).

The clearest indication of common interest is dual representation (*see id.*; *North Riv. Ins. Co. v Columbia Cas. Co.*, 1995 WL 5792, *2-3, 1995 US Dist LEXIS 53, *6-7 [SD NY 1995]; *North Riv. v Philadelphia Reins.*, 797 F Supp at 366-367).[7] Common interest also extends to a situation where there is a joint defense or strategy, but separate representation (*North Riv. v Columbia Cas.*, 1995 WL 5792 at *3, 1995 US Dist LEXIS 53 at *7). Here, there is neither dual representation nor a joint defense or strategy. In addition, joint representation usually arises in situations between insurers and insureds. However, the relationship between an insured and insurer stands in stark contrast to a relationship between an insurer and a reinsurer. To begin with, an insurer is obligated to defend the insured, whereas a reinsurer has no such duty. Moreover, the parties' interests in the present action are indisputably adverse, and the mere fact that they shared an interest in the eventual outcome of the underlying coverage litigation is not sufficient to create a common interest so as to defeat USF & G's claimed privileges. Indeed, the Reinsurers were "not responsible for the defense [of the underlying lawsuit], although [they] indirectly benefitted from it" (*United States Fire, supra*). Accordingly, we find the common interest doctrine inapplicable.

The Reinsurers, except American Re, alternatively contend that if no common interest is found then USF & G waived any privilege by disclosing documents in the underlying litigation. During the underlying litigation, USF & G sent a series of reports regarding the status of the case to the Reinsurers and USF & G's counsel met with the Reinsurers and discussed strategy. However, although the Reinsurers received information, they gave no input nor did they otherwise participate in the underlying litigation. Notably, Reinsurers were expressly invited

---

**7.** Not only was there an absence of dual representation in the underlying coverage litigation, the Reinsurers complain that USF & G conducted settlement negotiations for months in secret.

to "associate into the case," but declined. USF & G's disclosure of this information "did not function as a waiver because of their shared interest in the outcome of the [underlying litigation]" (*United States Fire, supra*).

## At Issue

The Reinsurers contend that USF & G waived any privilege by placing "at issue" the reasonableness and good faith of the settlement of the underlying action and the reasonableness and good faith of the allocations in the bill USF & G presented to the Reinsurers. In particular, the Reinsurers claim that USF & G has placed the privileged materials at issue (1) by alleging that the settlement and bill were made in good faith and consistent with law; (2) through its alleged bad faith in defending the underlying action;[8] and (3) through deposition testimony of its witnesses.

Under the "at issue" doctrine, where a party places legal advice or other privileged facts or communication at issue, it is deemed to have waived the privilege with respect to such facts or communications and can be compelled to produce them. This doctrine applies where a party, through its affirmative acts, places privileged material at issue and has selectively disclosed the advice (*see Orco Bank v Proteinas Del Pacifico*, 179 AD2d 390 [1992]; *United States Fire, supra*). It reflects the principle that privilege is a shield and must not be used as a sword (*see McKinney v Grand St., Prospect Park & Flatbush R.R.*, 104 NY 352, 355 [1887]; *Matter of Farrow v Allen*, 194 AD2d 40, 45-46 [1993]).

An insurer does not place the bona fides of a settlement at issue merely by alleging in a pleading that the settlement was reasonable and in good faith (*United States Fire, supra; North Riv. v Columbia Cas.*, 1995 WL 5792 at *6, 1995 US Dist LEXIS 53 at *16). Nor can an "at issue" waiver of the privilege be premised on the contention that a portion of the underlying settlement was allocated to bad faith claims. Apart from the fact that USF & G maintains that no amount was paid on account of bad faith liability, the contrary claim of the Reinsurers cannot effectuate a waiver of USF & G's privileges (*see Chase Manhattan Bank N.A. v Drysdale Sec. Corp.*, 587 F Supp 57, 59 [SD NY 1984]).

However, the same cannot be said regarding preparation of the bill. During the testimony of James Kleinberg, many questions were asked regarding USF & G's decision to allocate all

---

8. The Reinsurers do not offer any legal support for this contention.

claims to a single treaty year as opposed to spreading them over the several coverage years. This witness repeatedly revealed the advice he received regarding preparation of the bill. Consequently, he placed this matter at issue (*see Weizmann Inst. of Science v Neschis*, 2004 WL 540480, 2004 US Dist LEXIS 4254 [SD NY 2004]). Therefore, the Reinsurers may seek testimony and production of documents regarding presentation of the reinsurance claim as defined by TIG's request dated October 20, 2005, as ordered by the Referee on December 4, 2005, only to the extent that the discovery relates to disclosures made during James Kleinberg's EBT testimony.

The Reinsurers urge a broad subject matter waiver. However, USF & G argues that it does not intend to advance an "advice of counsel" defense. Given USF & G's representation, there is no need to expand the waiver (*see Kirschner v Klemons*, 2001 WL 1346008, 2001 NY Dist LEXIS 17863 [SD NY 2001]). However, the scope of the waiver is narrowed in reliance on USF & G's representation that "advice of counsel" is not at issue. Accordingly, the court should strictly enforce this disclaimer at trial, and USF & G should not be permitted to raise this defense to Reinsurers' claims (2001 WL 1346008 at *4 n 2, 2001 NY Dist LEXIS 17863 at *12 n 2).

The Reinsurers contend that USF & G waived its claim of attorney-client and work product privileges by failing to assert these privileges on four prior occasions.[9] However, USF & G contends that the prior and instant document requests are distinct. Specifically, USF & G claims the records previously requested (and the subject of an earlier appeal) were not privileged documents, and refers to court papers in which the Reinsurers characterized those previously requested documents as not privileged.[10] In any event, neither the Referee nor Supreme Court made a finding as to whether to preclude USF & G from raising privilege on the ground that it had failed to

---

**9.** Specifically, the Reinsurers assert that (1) USF & G relied solely on the "follow-the-fortunes" doctrine at a January 14, 2004 conference with the Referee; (2) in a cover letter dated January 29, 2004 transmitting a proposed order to the Referee, USF & G referred to a settlement privilege, but did not mention attorney-client or work product privilege; (3) in seeking further review of the Referee's February 9, 2004 order compelling disclosure, USF & G argued only that settlement communications were protected by the "follow-the-fortunes" doctrine and public policy; and (4) on appeal from Supreme Court's December 9, 2004 order directing disclosure, USF & G argued only that the "follow-the-fortunes" doctrine and public policy protected settlement information from disclosure.

**10.** Notably, TIG's written request and reply do not include an argument that USF & G abandoned its privilege claim by not arguing privilege on the appeal from the prior disclosure order. Nor was the issue raised at oral argu-

object to an earlier document request based on these two privileges. In addition, the parties strenuously argued the merits of these two privileges regarding the instant discovery request; the law directs full disclosure of all material and necessary evidence to prosecute or defend an action (*see* CPLR 3101 [a]; *Spectrum Sys. Intl.*, 78 NY2d at 376); and we are unable to conclude on this record that these two privileges were waived with respect to those documents sought in the earlier disclosure request. Indeed, had the same documents been requested, it would appear that this appeal would be moot.

We have considered and reject appellants' remaining contentions. Concur—Andrias, J.P., Marlow, Sweeny and Malone, JJ.

McGuire, J., concurs in part and dissents in part in a memorandum as follows: I agree with much of the majority's analysis and discussion. Specifically, I agree that the Reinsurers' claim of a "substantial need" for the disclosure they seek provides no basis for invading USF & G's attorney-client and work product privileges. I also agree that on the existing record, we cannot conclude that USF & G waived its right to assert these privileges by failing to assert them in prior discovery proceedings. Although I agree as well that the Reinsurers' reliance on the "common interest" doctrine is misplaced, my reasons for that conclusion differ from the majority's. Finally, although I agree with the majority's discussion of "at issue" waivers in every other respect, I disagree with its conclusion that one of USF & G's employees, James Kleinberg, waived USF & G's attorney-client privilege during his deposition.

With respect to the "common interest" doctrine, it operates to protect privileges such as the attorney-client privilege that otherwise would be waived by disclosure (*Aetna Cas. & Sur. Co. v Certain Underwriters at Lloyd's, London*, 176 Misc 2d 605, 612-613 [1998], *affd* 263 AD2d 367 [1999]). Thus, if A and B share a common interest, the disclosure by A to B of an otherwise privileged communication does not waive the privilege. Of course, however, the "common interest" doctrine is not a sword. Thus, B cannot require A to disclose to it an otherwise privileged communication solely on the basis of the existence of their common interest. In this case, USF & G unquestionably shared a common interest with the Reinsurers in the underlying coverage litigation (*Gulf Ins. Co. v Transatlantic Reins. Co.*, 13 AD3d 278, 280 [2004]). Indeed, on the basis of the "common interest" doctrine USF & G resisted disclosure in the coverage litigation to Western of reports it had made to the Reinsurers

ment before Supreme Court, although on this appeal USF & G appears to concede that the abandonment issue was before the motion court.

(or some of them), reports that USF & G has described as "comprised of information obtained by USF & G's counsel." To the extent the majority's position is that USF & G has not lost the attorney-client privilege in this reinsurance dispute, where it just as unquestionably does not share a common interest with the Reinsurers, merely because the parties once shared a common interest in the coverage litigation, I wholeheartedly agree.

The remaining question concerns the potential effects of the disclosures USF & G made to the Reinsurers in the coverage action. With the exception of American Re,[1] the Reinsurers argue that on account of the disclosures USF & G made to the Reinsurers prior to the settlement of the underlying mass tort and coverage litigation, USF & G waived the attorney-client and work product privileges, at least as to the Reinsurers and as to all other communications on the same subjects. In this regard, the Reinsurers rely on the settled principle that voluntarily disclosing a privileged communication waives the privilege for all other communications on the same subject (*see Matter of Stenovich v Wachtell, Lipton, Rosen & Katz*, 195 Misc 2d 99, 108 [2003] ["The waiver of the attorney-client privilege( ) normally compels the production of other documents protected by the privilege which relate to the same subject" (internal quotation marks and citation omitted)]). This argument entails the following proposition: if A and B share a common interest and A elects to disclose to B a privileged communication on a particular subject (either a communication to A's counsel or counsel's advice to A), B can compel A to disclose to it *all* otherwise privileged communications on the same subject, even though B could not in the first instance have compelled A to disclose any privileged communications on that or any other subject.[2]

This argument, however, is foreclosed by our decisions in *United States Fire Ins. Co. v Phoenix Assur. Co. of N.Y.* (193 AD2d 559 [1993], *affg for reasons stated by Moskowitz, J.*, Sup Ct, NY County, Aug. 18, 1992, Index No. 7712/91), and *Gulf Ins. Co.* (*supra*). In *United States Fire,* the reinsurer argued that the ceding insurers had "waived the privilege by providing privileged documents to them in the past." In rejecting that contention,

---

1.  American Re joined in the brief filed in this Court by defendant TIG Insurance Company (TIG), another of the Reinsurers, except as to section V, in which TIG raises the common-interest doctrine and urges that USF & G waived the privileges on account of the disclosures it made to the Reinsurers prior to the settlement of the underlying mass tort and coverage litigation.

2.  Presumably, the Reinsurers maintain that the waiver as to B occurs at the time of the disclosure, and not that it may arise thereafter, if and to the extent the interests of A and B happen to become adverse.

Justice Moskowitz ruled that the "disclosure [by the insurers] of certain coverage counsel correspondence to [the reinsurer] did not function as a waiver because of their shared interest in the outcome of the [coverage] dispute." Although the specific character and content of the correspondence is not discussed in Justice Moskowitz's opinion, the reinsurers took the position in this court, and the insurers did not dispute, that the correspondence contained otherwise privileged material (brief for appellant Phoenix Assurance Company of New York in *United States Fire*, at 23-28; brief for respondents United States Fire Insurance Company and International Insurance Company in *United States Fire*, at 16-17).

Similarly, in *Gulf Ins. Co.*, the insurer had provided updates to its reinsurers on the status of the litigation between it and the insured (13 AD3d at 278-279). One of the documents sent by the insurer to its reinsurers was an executive summary of the coverage litigation prepared by the insurer's outside counsel in which counsel discussed various defenses (brief for respondents Transatlantic Reinsurance Company and Odyssey America Reinsurance Corporation in *Gulf Ins. Co.*, at 23-24; reply brief for appellant Gulf Insurance Company in *Gulf Ins. Co.*, at 23-24). Because of the common interest of the insurer and the reinsurers in the outcome of the coverage litigation, we held that the earlier "[p]roduction of documents" by the insurer to the reinsurer "does not prevent the assertion of privilege of similar documents in an adversary situation" (13 AD3d at 280).

Although the Reinsurers seek to distinguish *United States Fire* and *Gulf Ins. Co.*, they are not persuasive. That USF & G may have disclosed to its reinsurers more privileged communications (or more blatantly privileged communications) than the insurers in *United States Fire* and *Gulf Ins. Co.* disclosed to their reinsurers is irrelevant to the issue of whether a waiver occurred. As USF & G points out, moreover, other authorities also support its position (*see e.g.* Restatement [Third] of Law Governing Lawyers § 76 ["The Privilege In Common-Interest Arrangements"], Comment *f* [2005] ["Disclosing information does not waive the privilege with respect to other communications that might also be germane to the matter of common interest but that were not in fact disclosed"]).

I respectfully disagree with the majority that USF & G waived the attorney-client privilege when James Kleinberg, the USF & G reinsurance director who prepared the reinsurance bill, was deposed during this litigation and, as the majority puts it, "repeatedly revealed the advice he received regarding preparation of the bill." As Kleinberg testified, in preparing the rein-

surance bill he sought to mirror the rationale for the underlying settlement of the coverage action, i.e., to "follow the settlement." Because he had not been a participant in the settlement negotiations, he had to get information about the settlement from someone who had been a participant. That person was Robert Omrod, one of USF & G's in-house lawyers. What Omrod "revealed" to Kleinberg was the basis for the settlement and, specifically, that it was settled in accordance with two rules of California law (the "all sums" and "non-accumulation" rules). As this Court made clear in the prior appeal (19 AD3d 103 [2005]), neither the back-and-forth between the parties in the settlement negotiations nor the terms of the settlement are privileged. Thus, in explaining to Kleinberg the basis for the settlement, Omrod did not disclose any privileged communications. Rather, he merely informed Kleinberg about particular facts of the settlement.

Moreover, the same information about the basis of the settlement and the role it played in the reinsurance bill is set forth in a document transmitted to the Reinsurers by USF & G. The only difference between the information conveyed to the Reinsurers in that document and the information conveyed by Kleinberg during his deposition is that the document does not recite that Omrod or anyone else was the source of the asserted facts about the settlement. Obviously, the fortuitous circumstance that Kleinberg's source was an attorney cannot be the basis for finding a waiver. The key point is that Kleinberg revealed only unprivileged factual matters relating to the settlement and thus his deposition testimony affords no basis for the conclusion that USF & G waived the privilege (*Niesig v Team I*, 76 NY2d 363, 372 [1990] [attorney-client privilege "applies only to *confidential communications* with counsel, it does not immunize the underlying factual information . . . from disclosure to an adversary" (citations omitted)]).

Accordingly, I would reverse Supreme Court's order denying USF & G's application to vacate the order of the Special Referee, and grant the application.