OPINION OF THE COURT
Martin Shulman, J.
In motion sequence number 007 under index number 109227/07 and related third-party index number 590867/10 (the Tupi case), defendant and third-party plaintiff Morgenthau (defendant or DA) moves for an order compelling discovery claimed to be subject to the attorney-client privilege. In motion sequence number 008 under index number 109226/07 and related third-party index number 590866/10 (the Slemish case), the DA seeks the same relief against the plaintiff therein, in addition to an order compelling compliance with prior discovery demands *802 seeking production of certain business records. Both plaintiffs oppose defendant’s motions, which are consolidated for disposition.
The relevant facts are more fully stated in this court’s August 4, 2008 decision denying plaintiffs’ motions for partial summary judgment (Tupi Cambios S.A. v Morgenthau, 20 Misc 3d 1131[A], 2008 NY Slip Op 51700[U] [Sup Ct, NY County 2008]). In the Tupi case, plaintiff, Tupi Cambios, S.A., is a corporation native to Paraguay, where it operates a foreign money exchange business. In the Slemish case, plaintiff, Slemish Corporation, 5. A., is a Uruguayan corporation which provides short-term loans and credit to customers, many of whom are Tupi’s customers.
Both Tupi and Slemish were clients of Beacon Hill Service Corporation (BHSC) and its sole principal Anibal Contreras. Defendant, in his official capacity and by his subordinates, prosecuted BHSC and Contreras for transmission of money in New York without the appropriate license in violation of Banking Law §§ 641 and 650. Ultimately, the indictment initiating the prosecution was dismissed against Contreras and pursued only against BHSC, which ultimately was convicted of running a money transmitting business without the required license under Banking Law § 650 (2) (b) (1), a class E felony. As a corporate entity invulnerable to a prison term, BHSC was fined $4,210.
Simultaneously with the criminal prosecution, the DA as claiming authority commenced an action against Contreras and BHSC under CPLR article 13-A seeking forfeiture of funds in their possession or control as the proceeds, substituted proceeds or instrumentalities of the crime of violating the foregoing Banking Law provisions.[1] The DA obtained a preliminary injunction and order of attachment in the forfeiture action restraining BHSC’s assets, including but not limited to certain J.R Morgan Chase Bank fiduciary accounts which BHSC maintained on behalf of its clients, including Tupi and Slemish (collectively, plaintiffs). The forfeiture action was resolved by stipulation between BHSC and the DA, pursuant to which defendant released a portion of the restrained funds to BHSC and BHSC forfeited the remainder. The forfeited funds were ultimately distributed to various law enforcement agencies.
*803 Claiming that a certain portion of the forfeited funds held in the J.P. Morgan Chase Bank accounts belonged to them, plaintiffs commenced these actions to recover their funds.[2] The sixth causes of action seek remission under CPLR 1311 (7). To succeed in reclaiming the forfeited funds, plaintiffs must demonstrate that they lacked actual knowledge of the forfeiture action and neither knew nor should have known that the forfeited property was involved in a crime. (Id.)[3]
Attorney-Client Privilege
On April 2, 2013, by letter to plaintiffs’ current counsel, Bernard D’Orazio, Esq., the DA demanded the turnover of all written communications between plaintiffs and the law firm Fox, Horan and Camerini LLP (FHC) regarding the forfeiture action against BHSC.[4] This New York firm’s involvement came to light during the video teleconference depositions of plaintiffs’ principals in January 2013. Specifically, witnesses for Tupi and Slemish testified they became aware of the forfeiture action when BHSC’s accounts were frozen and that they consulted FHC with respect thereto. Plaintiffs’ counsel refused the DA’s demand on the ground that any such documents were protected by the attorney-client privilege which has not been waived. (See CPLR 4503 [a] [1].)
In support of its motions, the DA contends that plaintiffs have in fact waived the privilege by alleging a cause of action *804 for remission under CPLR 1311 (7), thus placing questions pertaining to their notice of the forfeiture action at issue. Defendant argues plaintiffs cannot use the attorney-client privilege to protect from disclosure evidence that would impact on that very issue. The DA further cites deposition testimony wherein plaintiffs’ principals confirmed they consulted FHC about the forfeiture action while it was pending and testified as to the content of such communications. In opposition, Tupi[5] denies having waived the privilege and argues the DA fails to demonstrate any need for such materials or unfair prejudice in the event they are not produced.
Confidential communications between an attorney and client in the course of professional employment are generally privileged unless waived. (CPLR 4503.) A client can waive the attorney-client privilege by placing “the subject matter of the privileged communication in issue or where invasion of the privilege is required to determine the validity of the client’s claim or defense and application of the privilege would deprive the adversary of vital information.” (Jakobleff v Cerrato, Sweeney & Cohn, 97 AD2d 834, 835 [2d Dept 1983] [citations omitted]; Deutsche Bank Trust Co. of Ams. v Tri-Links Inv. Trust, 43 AD3d 56, 63-64 [1st Dept 2007].) A client can also waive the attorney-client privilege “by placing the subject matter of counsel’s advice in issue and by making selective disclosure of such advice.” (Orco Bank v Proteinas Del Pacifico, 179 AD2d 390, 390 [1st Dept 1992].) Such a waiver “reflects the principle that privilege is a shield and must not be used as a sword.” (American Reinsurance Co. v United States Fid. & Guar. Co., 40 AD3d 486, 492 [1st Dept 2007] [citations omitted].)
With respect to “at issue” waiver, the First Department in Deutsche Bank, stated as follows:
“that a privileged communication contains information relevant to issues the parties are litigating does not, without more, place the contents of the privi *805 leged communication itself ‘at issue’ in the lawsuit; if that were the case, a privilege would have little effect. Rather, ‘at issue’ waiver occurs ‘when the party has asserted a claim or defense that he intends to prove by use of the privileged materials.’ ” (Id. at 64 [citations omitted].)
“At issue” waiver is often found in cases where a client asserts reliance on counsel’s advice as a defense to an action. (See e.g. Orco Bank.) “However, the waiver has been applied more broadly to cover circumstances in which a client does not expressly claim that he has relied on counsel’s advice, but where the truth of the parties’ position can only be assessed by examination of a privileged communication” (Bolton v Weil, Gotshal & Manges LLP, 4 Misc 3d 1029[A], 2004 NY Slip Op 51118[U], *4 [Sup Ct, NY County 2004] [citations omitted]; see also Matter of Bank of N.Y. Mellon, 42 Misc 3d 171 [Sup Ct, NY County 2013]; Royal Indem. Co. v Salomon Smith Barney, Inc., 4 Misc 3d 1006[A], 2004 NY Slip Op 50739[U], *7 [Sup Ct, NY County 2004]; Valutron, N.Y v Pennie & Edmonds, 6 Misc 3d 1008[A], 2004 NY Slip Op 51747[U], *2 [Sup Ct, NY County 2004]).
Here, in opposition to the DA’s motion, Tupi relies on the holding in Deutsche Bank, contending the attorney-client privilege should not be deemed waived in this case because it does not intend to use privileged communications with FHC to prove its claims. Tupi further denies any waiver as a result of selective disclosure of counsel’s advice.
Merely alleging a CPLR 1311 (7) remission cause of action cannot be construed as waiving the attorney-client privilege. However, in the case at bar, witnesses for both plaintiffs testified at their depositions that they became aware of the forfeiture action when their accounts maintained through BHSC at JPMorgan Chase were frozen and they no longer had access to their funds, thus prompting the retention of FHC as counsel.[6] Plaintiffs retained FHC for the purpose of keeping them abreast of the status of proceedings involving BHSC as such proceedings pertained to their frozen accounts. Testifying on Tupi’s behalf, Lovera Bareiro disclosed that counsel recommended a *806 “wait and see” approach, i.e., to wait until the proceedings against BHSC were resolved.[7]
Indeed, plaintiffs’ own counsel questioned both witnesses at their depositions regarding advice received from FHC.[8] Testifying for Slemish, Costa Meza stated that FHC never advised him that restrained funds were at risk of being forfeited, that he was never notified as to the nature of charges pending against BHSC and that he had not been advised that BHSC was required to have a New York banking license to operate its business.[9] Lovera Bareiro testified similarly, stating that counsel advised him that the problem was with BHSC, not Tupi.[10]
In the case at bar, plaintiffs’ actual notice and/or knowledge with respect to the forfeiture action against BHSC and the restraint of their funds has been placed at issue. After their funds were frozen, FHC as counsel provided information to plaintiffs with respect to the BHSC proceedings. The specifics of what plaintiffs knew and when they knew it are key to the viability of their remission causes of action and communications with FHC are likely to shed light on these questions. Tupi makes no claim that the DA could obtain such information from another non-privileged source.
Further, having disclosed the content of certain communications with FHC, including divulging counsel’s strategic recommendations, Tupi has opened the door for the DA to pursue further information to refute and/or verify plaintiffs’ claims of lack of notice and/or knowledge. To rule otherwise would prejudice defendant by depriving it of information vital to preparing a defense.
To address Tupi’s reliance on Deutsche Bank which provides that “at issue” waiver of the attorney-client privilege applies only when a party intends to prove a claim or defense by using privileged materials, plaintiff does not indicate how it intends to prove the lack of notice and/or knowledge element of the remission cause of action. Plaintiffs’ counsel’s line of questioning at both depositions, wherein he asks specific details as to what FHC did and did not advise, appears to indicate otherwise.
For all of the foregoing reasons, the DA’s motion in the Tupi case is granted and Tupi is directed to produce the requested *807 communications with FHC within 20 days of the date hereof. The corresponding portion of defendant’s motion to compel in the Slemish case is also granted, albeit on the grounds that, purportedly, no attorney-client relationship and therefore no privilege exists. Slemish is thus directed to produce the requested communications with FHC within 20 days of the date hereof, to the extent that any may exist.
Slemish Business Records
Turning to the second branch of the DA’s motion in the Slemish case, defendant requests an order compelling Slemish to comply with prior discovery demands contained in a notice of discovery dated October 19, 2007,[11] or alternatively, to provide an affidavit explaining the loss of Slemish’s business records and detailing the efforts made to locate them. (See Slemish motion at exhibit A.) Defendant argues the information sought in this demand is relevant to ownership of the funds in question and whether Slemish has standing to bring the action.
As detailed in defendant’s moving papers, Slemish has produced documents consisting of approximately 400 pages (the produced documents). The DA contends this production contained no documents pertaining to Slemish’s clients. At a court conference, it was alleged that Slemish may not have retained business records from the period in question and an affidavit detailing the loss thereof was to be provided. Thereafter, Slemish provided an undated affidavit from Osvaldo Alejandro Ruiz Nicolaus, a Paraguayan attorney who states inter alia that he is Slemish’s legal advisor and that all responsive documents in their possession and control have been produced. (Slemish motion at exhibit B.)
Summarizing Costa Meza’s deposition testimony, it appears that the nature of Slemish’s business was not paper intensive with respect to its customer transactions. According to Costa Meza, the only documents generated were allegedly items such as client application forms and client checks. Costa Meza testified he turned all of Slemish’s business records over to its prior counsel, Berenice Busson, who later gave them to present counsel.
*808 Defendant also deposed Nicolaus, who testified he had received documents in 2005 or 2006 from Slemish consisting of a folder with 200 to 300 pages said to contain “petition for transfers, summaries of accounts,” as well as copies of client checks and applications. (Exhibit E to Slemish motion at 11-15.) Nicolaus testified he returned the folder of documents to Costa Meza, who sent it to Busson in New York. (Id. at 17-18.) In response to the DA’s demand to produce the documents Nicolaus described, Slemish’s counsel responded that all records had been produced.
In opposition, Slemish reiterates that all responsive documents have been produced and counters that the DA’s office has in its possession records from the criminal proceedings against BHSC, which he claims include documents concerning the transactions processed in Slemish’s account. Slemish submits an affidavit from Busson, confirming she provided present counsel with her firm’s entire file, “which included a portfolio containing legal documentation, accounting and tax records, and bank records” that Slemish provided to her firm.[12]
While this court relies upon Slemish’s counsel’s averment as an officer of the court that he has produced all documents he received from Busson, it is not readily apparent from this record that Slemish provided Busson with complete documentation. The fact remains that Nicolaus testified to having viewed certain items which the DA contends were not included in the produced documents, to wit, petitions for transfers, summaries of accounts, copies of checks and client applications (the alleged omitted items).[13] Accordingly, this branch of defendant’s motion is granted to the extent that Slemish is directed to submit an affidavit(s) from a person or persons with knowledge, explaining this discrepancy and providing sufficient detail from which it could be concluded that Slemish has performed due diligence and made a good faith effort to locate the omitted items.
*809 This court has considered the parties’ remaining arguments and finds them unavailing. For all of the foregoing reasons, it is hereby ordered that the motion of defendant and third-party plaintiff Robert M. Morgenthau, District Attorney of New York County, for an order compelling Tupi Cambios, S.A. to produce copies of all communications between said plaintiff and its former counsel, FHC, is granted; and it is further ordered that the branch of the motion of defendant and third-party plaintiff Robert M. Morgenthau, District Attorney of New York County, for an order compelling Slemish Corporation, S.A. to produce copies of all communications between said plaintiff and its alleged former counsel, FHC, is granted; and it is further ordered that Tupi Cambios, S.A. and Slemish Corporation, S.A. shall produce the foregoing communications within 20 days of the date hereof; and it is further ordered that the branch of the motion by defendant and third-party plaintiff Robert M. Morgenthau, District Attorney of New York County, for an order compelling Slemish Corporation, S.A. to produce the omitted items is granted to the extent set forth above.

. Morgenthau v Contreras, Sup Ct, NY County, index No. 400643/03 (the forfeiture action).

. Plaintiffs previously commenced a special proceeding against the DA which was dismissed as untimely, however, plaintiffs were granted leave to serve and file an amended petition. (Tupi Cambios S.A. v Morgenthau, 48 AD3d 278 [1st Dept 2008].)

. CPLR 1311 (7) provides, in relevant part:
“Remission. In addition to any other relief provided under this chapter, at any time within one year after the entry of a judgment of forfeiture, any person, claiming an interest in the property subject to forfeiture who did not receive actual notice of the forfeiture action may petition the judge before whom the forfeiture action was held for a remission or mitigation of the forfeiture and restoration of the property . . . The court may restore said property upon such terms and conditions as it deems reasonable and just if (i) the petitioner establishes that he or she was without actual knowledge of the forfeiture action or any related proceeding for a provisional remedy and did not know or should not have known that the forfeited property was connected to a crime or fraudulently conveyed and (ii) the court determines that restoration of the property would serve the ends of justice” (emphasis added).

. The DA’s motion papers and the plaintiffs’ deposition transcripts refer to FHC as “Fox Camerini.”

. Slemish opposes this branch of the DA’s motion on the grounds that it never retained FHC, was never FHC’s client and did not receive any communications from them. This statement appears to conflict with the deposition testimony of Jose Luis da Costa Meza, Slemish’s witness (see Costa Meza deposition tr, exhibit C to Slemish motion at 97-98). However, Costa Meza went on to testify that communications with FHC were directed to Tupi, but were “for everybody” (id. at 102-103). Taking Slemish at its word, if there was no attorney-client relationship with FHC, then any communications between Slemish and FHC are not privileged and should be produced to the extent they may exist.

. See deposition tr of Francisco Isabelino Lovera Bareiro, testifying on Tupi’s behalf, exhibit B to Tupi motion at 132-133, 136-137, 187; see also Costa Meza deposition tr, exhibit A to Tupi motion at 94-98, 102.

. See Lovera Bareiro tr at 137, lines 9-16; at 190.

. See Lovera Bareiro tr at 188-191; Costa Meza tr at 125.

. See Costa Meza tr at 125.

. See Lovera Bareiro tr at 189-192.

. The documents sought include
“[a]ll bank records, deposits, and instructions, accounting records or books, tax documents, etc., regarding funds in the possession of or held by, [BHSC], on behalf of or from [Slemish], from the inception of [Slemish’s] relationship with [BHSC]. Such information shall specifically include identifying information relating to the depositors and/or clients of [Slemish].” (Id., ¶ 1 [a].)

. Plaintiffs counsel herein identifies the documents he received from Busson which were produced to the DA as Bates-stamped document numbers SL 00099 through SL 00392.

. According to the DA, the produced documents consist of
“items such as bank statements from Chase bank for the [BHSC] account that was managed in connection with [Slemish], corporate documents, such as articles of incorporation and minutes of shareholders meetings, newspaper articles and a business relationship agreement between the Plaintiffs. Approximately 280 of the pages appear to be legal documents connected to a Brazilian case against various owners and officers of co-Plaintiff [Tupi].” (Guilmain aff in support, ¶ 5.)