■ VERAS INVESTMENT PARTNERS, LLC, et al., Appellants, v AKIN GUMP STRAUSS HAUER & FELD LLP, Respondent. [860 NYS2d 78]——

Order, Supreme Court, New York County (Bernard J. Fried, J.), entered February 26, 2008, which denied plaintiffs' motion to vacate the order, same court (John A.K. Bradley, J.H.O.), dated November 5, 2007, granting defendant's motion for a declaration that plaintiffs waived the attorney-client privilege by placing certain subjects "at issue," and to compel the disclosure of otherwise privileged communications and attorney work product, unanimously modified, on the law and the facts, disclosure of otherwise privileged materials relating to defendant's 2002 advice to plaintiffs and the October 2003 proffer to the regulators limited to the time period ending January 31, 2005, disclosure of otherwise privileged materials relating to the legality of plaintiffs' trading practices limited to the time during which plaintiffs engaged in such practices, disclosure of nonparty counsels' work product consisting of their analyses and evaluations of plaintiffs' jeopardy denied insofar as they relate to plaintiffs' rationale for entering into the settlement agreement with the regulators, disclosure of otherwise privileged

materials relating to defendant's alleged conflicts of interests and plaintiffs' execution of the June 28, 2004 waiver letter limited to the time period ending with defendant's resignation as counsel in May 2005, and otherwise affirmed, without costs.

In this legal malpractice and fraud action, defendant moved for an order compelling disclosure of communications plaintiffs may have had with their nonparty counsel as well as the work product of such counsel. The judicial hearing officer (JHO) supervising discovery granted the motion on the ground that plaintiffs waived the attorney-client privilege. Thereafter, the Commercial Division denied plaintiffs' CPLR 3104 (d) motion to vacate the JHO's order. The instant appeal, from the Commercial Division's order, concerns the scope of plaintiffs' waiver.

Plaintiffs are hedge funds, related entities and their principals, James McBride, Kevin Larson and Brian Virginia. According to the complaint, McBride and Larson formed a hedge fund in late 2001 while being advised and represented by defendant and Eliot D. Raffkind, one of its partners. Virginia joined McBride and Larson in the enterprise approximately three months after they decided to form the hedge fund. Plaintiffs claim to have received defendant's advice regarding two trading strategies known as mutual fund market timing and late trading. Mutual fund market timing generally involves the short-term "in and out" purchase and sale of mutual fund shares in a manner designed to take advantage of inefficiencies in the way mutual funds make daily determinations of the net asset value (NAV) of their shares. The NAV of mutual funds is determined at each day's close of the stock market, 4:00 P.M. Eastern Standard Time. Prices of mutual funds, particularly international funds, may become stale due to information delay. Market timers exploit the information delay by buying shares when their prices are artificially low or selling shares when their prices are artificially high. Late trading involves the placing of orders for mutual fund shares after the close of the stock market on a given day, and purchasing and selling the shares at that day's NAV rather than the next day's NAV. Late trading "with information" involves the use of market information that becomes available after the 4:00 P.M. close. Plaintiffs claim to have been erroneously advised by Raffkind and other Akin Gump attorneys that their market timing and late trading practices posed no legal risks. However, beginning in September 2003, these very practices became the subject of investigations launched by the New York State Attorney General, the Securities and Exchange Commission, the Commodity Futures Trading Commission and the Texas Security Board (collectively, the regulators). In addi-

tion, several lawsuits were brought against plaintiffs by mutual fund investors who claimed to have been damaged by the market timing and/or late trading practices.

In September 2003, defendant undertook the representation of plaintiffs and Raffkind in connection with the regulatory investigations. On or about October 9, 2003, McBride, Larson and Raffkind proffered before the regulators. In Larson's proffer, he claimed to have been advised by Raffkind in 2002 that late trading with information was permissible. Defendant submits that Raffkind did not recall giving such advice in 2002 but would not rule it out. The parties differ on the issue of whether, at the time of the proffers, McBride told defendant that he had received similar advice from Raffkind. Plaintiffs assert that the said representation was tainted by conflicts of interests because Raffkind's ongoing advice and approval of their trading practices were directly implicated in the investigations. It is plaintiffs' position that defendant could have asserted an advice-of-counsel defense on their behalf but declined to do so due to its conflicts of interests. Nevertheless, plaintiffs acknowledged and waived potential conflicts of interests stemming from Raffkind's role by letter dated June 28, 2004.

Plaintiffs' principals retained individual counsel shortly after October 2003, and plaintiffs collectively retained the firm of Katten Munchin Zavis and Rosenman LLP (KMZ) to assist defendant in the regulatory investigations. Plaintiffs allege that defendant resisted KMZ's participation in their defense by limiting its role and access to relevant information. In November 2004, plaintiffs retained an "unconflicted" law firm, Richards Spears Kibbe & Orbe LLP, now known as Richards Kibbe & Orbe LLP (RK & O), on the premise that defendant was acting to protect its own interests rather than plaintiffs'. Defendant continued to act as plaintiffs' counsel until its withdrawal on May 2, 2005. Taking the lead in plaintiffs' defense, RK & O provided the regulators with a January 31, 2005 letter that detailed certain advice purportedly given to plaintiffs by Raffkind. In March 2005, McBride, Larson and Raffkind were called to testify before the regulators. Thereafter, plaintiffs reached a settlement with the regulators that required a substantial disgorgement as well as other sanctions.

The complaint sets forth claims that defendant (1) negligently and improperly advised plaintiffs while they were engaged in market timing and late trading, (2) improperly undertook to represent plaintiffs during the regulatory investigations in light of a conflict of interests stemming from the said advice and (3) intentionally and improperly thwarted plaintiffs' advice-of-

counsel defense in order to shield itself from liability. The JHO determined that plaintiffs had waived the attorney-client privilege and work-product immunity with respect to communications among plaintiffs and their other counsel relating to (1) plaintiffs' rationale for entering into the settlement agreement with the regulators, (2) defendant's 2002 late trading advice and preparation of McBride and Larson for their proffers, (3) the legality of plaintiffs' trading practices and (4) defendant's disclosure of potential conflicts and plaintiffs' understanding and waiver of such conflicts.

The determinations of a trial court overseeing discovery are generally not disturbed absent an improvident exercise of discretion (*Those Certain Underwriters at Lloyds, London v Occidental Gems, Inc.*, 41 AD3d 362, 364 [2007]). This Court is nonetheless vested with a corresponding power to substitute its own discretion for that of the trial court, even absent an abuse of the latter's discretion (*Andon v 302-304 Mott St. Assoc.*, 94 NY2d 740, 745 [2000]). Communications between an attorney and a client in the course of professional employment for the purpose of obtaining legal advice are privileged and not discoverable unless the privilege is deemed to have been waived by the client (*Jakobleff v Cerrato, Sweeney & Cohn*, 97 AD2d 834, 835 [1983]). The privilege is waived where a party affirmatively places the subject matter of its own privileged communication at issue in litigation, so that invasion of the privilege is required to determine the validity of the party's claim or defense, and application of the privilege would deprive the opposing party of vital information (*Deutsche Bank Trust Co. of Ams. v Tri-Links Inv. Trust*, 43 AD3d 56, 63-64 [2007]). Plaintiffs acknowledge their waiver of the attorney-client privilege with respect to any advice they received concerning the legality of their market timing and late trading practices through September 2003, the period when they were engaged in those practices. Plaintiffs have also agreed to produce contemporaneous documents regarding their individual counsels' advice on the signing of the June 28, 2004 waiver of defendant's potential conflicts of interests. In all other respects, however, plaintiffs contend that the JHO's order is too broad because it sets forth no temporal limits and can be literally read to require the disclosure of even nonparty counsels' work product which was never shared with plaintiffs.

In rendering his decision, the JHO determined that any relevant advice plaintiffs received from their nonparty counsel bears on the issue of plaintiffs' reasonable reliance on defendant's advice regarding the legality of their trading practices. Based solely on the relevance of such advice, the JHO concluded that

plaintiffs had waived the privilege with respect to any attorney-client communications that bear on plaintiffs' state of mind regarding the legality of their trading practices. The JHO similarly reasoned that plaintiffs waived the privilege as to communications with nonparty counsel regarding defendant's disclosure of its potential conflicts and plaintiffs' understanding and waiver of such conflicts.

"[T]hat a privileged communication contains information relevant to issues the parties are litigating does not, without more, place the contents of the privileged communication itself 'at issue' in the lawsuit" (*Deutsche Bank*, 43 AD3d at 64). Instead, "at issue" waiver occurs when a party has asserted a claim or defense that he or she intends to prove by use of the privileged material (*id.*). Accordingly, it was error for the JHO to find waiver on the basis of relevance alone. By itself, relevance also provides no basis for the JHO's conclusion that plaintiffs' claims stemming from defendant's 2002 late trading advice and its preparation of McBride and Larson for their proffers raise "factual assertions which can only be resolved by an examination of the advice given by the other attorneys." The JHO's order also directs the disclosure of nonparty counsels' "analyses and evaluations of plaintiffs' jeopardy" with respect to plaintiffs' rationale for entering into the settlement agreement with the regulators. Such materials would constitute attorneys' work product, immune from disclosure under CPLR 3101 (c), because they involve strategy and legal theory (*see Rodriguez v City of New York*, 29 AD2d 962 [1968], *appeal dismissed* 26 NY2d 833 [1970]). The assertion of a cause of action with a claim for damages arising out of the settlement agreement does not constitute a waiver of the work product immunity (*see Deutsche Bank*, 43 AD3d at 66). Concur—Andrias, J.P., Gonzalez, Moskowitz and DeGrasse, JJ.