[837 NYS2d 15]

DEUTSCHE BANK TRUST COMPANY OF AMERICAS, Appellant, v TRI-LINKS INVESTMENT TRUST et al., Respondents.

First Department, May 15, 2007

## APPEARANCES OF COUNSEL

*O'Hare Parnagian LLP*, New York City (*Robert A. O'Hare, Jr.* and *Michael G. Zarocostas* of counsel), for appellant.

*Dreier LLP*, New York City (*Michael B. Roth* and *Amianna Stovall* of counsel), for respondents.

### OPINION OF THE COURT

FRIEDMAN, J.

A party suing to enforce an alleged right to indemnification for the costs of defending and settling a prior lawsuit does not thereby, without more, place at issue the party's privileged communications with counsel concerning the prior lawsuit and settlement. So far as the record for this appeal discloses, plaintiff, in commencing and prosecuting this action, has done nothing to waive the protection of the attorney-client privilege or the work-product doctrine as to materials concerning the defense and settlement of the prior lawsuit for which indemnity is sought. We therefore reverse and deny defendants' motion to compel plaintiff to produce 37 documents listed on its privilege log and four witnesses for further deposition questioning.

The instant dispute has its origin in the bankruptcy case of Centennial Resources, Inc. (Centennial), which was filed in Delaware in 1998. To finance Centennial's operations during the bankruptcy, a group of lenders provided it with a $15 million credit facility memorialized by a Debtor-In-Possession Credit and Guaranty Agreement, dated October 14, 1998 (the DIP Agreement). Plaintiff Deutsche Bank Trust Company of Americas, then known as Bankers Trust Company (Bankers Trust), was a party to the DIP Agreement both as a lender and as the "agent" of the DIP lending group.[1] Under the DIP Agreement, the lending group is required to indemnify Bankers Trust for any liability or litigation expense incurred as the result of actions (other than gross negligence or willful misconduct) taken in its capacity as the group's agent. The relevant provision of the DIP Agreement (section 11.06) provides as follows:

---

1. Throughout this opinion, plaintiff is referred to as Bankers Trust, whether the time under discussion is before or after plaintiff's name change.

"11.06 <u>Indemnification</u>. To the extent the Agent is not reimbursed and indemnified by [Centennial], the Lenders will reimburse and indemnify the Agent, in proportion to their respective 'percentages' [of interest in the credit facility] . . . , for and against any and all liabilities, obligations, losses, damages, penalties, claims, actions, judgments, costs, expenses or disbursements of whatsoever kind or nature which may be imposed on, asserted against or incurred by the Agent in performing its respective duties hereunder or under any other Loan Document or the Orders [of the bankruptcy court], in any way relating to or arising out of this Agreement or any other Loan Document or the Orders provided that no Lender shall be liable for any portion of such liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements resulting from the gross negligence or willful misconduct of the Agent."

In April 1999, Centennial began negotiating a sale of its assets to Western Mining & Investments, LLC (WMI). Initially, a majority-in-interest of the DIP lending group favored the proposed sale to WMI. However, defendant Tri-Links Investment Trust (Tri-Links), which began purchasing interests in the Centennial loans in April 1999, opposed the sale.[2] Tri-Links believed that it would be more profitable to hold Centennial's assets for the time being and then market them piecemeal in the future. By May 21, 1999, the date of a bankruptcy court hearing to consider whether to approve the sale to WMI, Tri-Links had acquired a majority interest in the DIP lending group (including Bankers Trust's interest). At the hearing, Bankers Trust, in its capacity as the lending group's agent under the DIP Agreement, filed an objection to the sale, pursuant to instructions it had received from Tri-Links, the majority lender. Ultimately, the bankruptcy court did not approve the sale of Centennial's assets to WMI.

In January 2002, WMI commenced an action against Bankers Trust (the WMI action) in the United States District Court for the Western District of Kentucky, seeking $225 million as damages for the failure of WMI's proposed purchase of Centennial's

---

2. Tri-Links was subsequently merged into defendant Nomura Special Situations Investment Trust (Nomura). In this opinion, the term "Tri-Links" is used to refer to both Tri-Links and Nomura.

assets. The theory of WMI's suit (which was later transferred to the District of Delaware) appears to have been that Bankers Trust made an enforceable oral promise to WMI that a majority-in-interest of the DIP lenders would approve the sale, which alleged promise was breached by Bankers Trust's filing (at Tri-Links' direction) of the lending group's objection to the sale. After Bankers Trust argued that WMI's claims were without merit because Bankers Trust had at all times acted as the agent of a disclosed principal, WMI amended its complaint to add a claim for breach of an alleged "implied warranty of authority" to cause the DIP lending group to approve the transaction.

The record reflects that, in May 2002, counsel for the Centennial estate (whose bankruptcy case was then still pending) sent Tri-Links a copy of the complaint in the WMI action and advised Tri-Links that Bankers Trust had reserved its indemnification rights against the estate in that regard.[3] The record also reflects that, in May 2003, Bankers Trust's counsel in the WMI action sent Tri-Links another copy of the WMI complaint and certain other documents relevant to the litigation. In its briefs, Bankers Trust represents (without contradiction by Tri-Links) that, from mid-2003 to early 2004, Tri-Links participated in the WMI action as a third-party witness and actively assisted Bankers Trust in the defense of the action. Such cooperation was so close, according to Bankers Trust, that Tri-Links refused to turn certain documents over to WMI based on an asserted joint-defense privilege with Bankers Trust.

Bankers Trust first formally notified Tri-Links of its intention to seek indemnification from Centennial's lenders under section 11.06 of the DIP Agreement on or about February 3, 2004. By letter of that date, Bankers Trust's counsel advised Tri-Links that the WMI action was scheduled to go to trial before a jury on March 15, 2004, since the Delaware federal court (to which the case had by then been transferred) had ruled that no summary judgment motions would be entertained.

---

3. Also in May 2002, Bankers Trust filed an open letter with the Delaware bankruptcy court announcing the commencement of the WMI action. That letter apparently was not sent directly to Tri-Links or its counsel, although Tri-Links' counsel, having entered a notice of appearance in the Centennial bankruptcy case, was in a position to know of the letter. We note that the decision appealed from is factually mistaken in its assertion that this "open letter" was directed to "the presiding justice in the Kentucky action" (presumably meaning the WMI action). As indicated, the letter in question is clearly addressed to the Delaware bankruptcy court, and advises that court of the pendency of the WMI action (at that point, still in Kentucky).

The February 3 letter further stated: "WMI has made several settlement demands, which it has revised downward over time. [Bankers Trust's counsel] actively is preparing to defend the Action at trial." The February 3 letter concluded with a request "to discuss this matter with you in light of your obligations to Bankers Trust under Section 11.06 of the Centennial DIP Agreement." Tri-Links did not respond to this letter.

By letter dated February 26, 2004, Bankers Trust's counsel advised Tri-Links that Bankers Trust was contemplating a settlement of the WMI action under which WMI—which had sought damages of $225 million—would be paid $2.7 million. The February 26 letter concluded: "Please contact me immediately if you wish to discuss this matter further." In response, a law firm representing Tri-Links sent a letter, dated March 2, 2004, making the following points:

> "First, the [WMI] Action does not involve . . . Tri-Links. . . . Second, based upon our current understanding of the facts and claims asserted against your client, Bankers Trust does not have a right to indemnification from our clients under Section 11.06 of [the DIP Agreement]. Third, the amount of the proposed settlement seems clearly excessive given that the underlying Action appears to be wholly without merit (unless, of course, Bankers Trust did engage in wrongful conduct outside of its agency)."

Bankers Trust entered into a settlement agreement with WMI, dated as of March 3, 2004. Pursuant to the settlement agreement, a stipulation of dismissal with prejudice was filed in the WMI action and WMI granted releases to Bankers Trust and all DIP lenders, including Tri-Links, which, according to the complaint in this action, now holds a 92.93% interest in the DIP lending group.

In September 2004, Bankers Trust commenced this action seeking to require Tri-Links to indemnify it for 92.93% of the alleged $6.35 million cost of defending and settling the WMI action (including the settlement payment to WMI, Bankers Trust's attorneys' fees, and other, unspecified litigation expenses). The complaint, which alleges that Bankers Trust settled the WMI action "reasonably and in good faith," asserts two causes of action, one for contractual indemnification under section 11.06 of the DIP Agreement, and the other for common-law indemnity. In its answer, Tri-Links pleads affirmative defenses asserting

that the settlement of the WMI action was "excessive and not reasonable," and that Bankers Trust "defended the underlying action in a negligent and inadequate manner."

In December 2005, Tri-Links made a motion to compel discovery pursuant to CPLR 3124. The motion sought an order directing Bankers Trust to produce 37 documents identified on its privilege log as attorney-client communications between Bankers Trust and its counsel concerning the defense or settlement of the WMI action, or the work product of its attorneys regarding such matters. Tri-Links' motion also sought to require Bankers Trust to produce, for a second time, four witnesses (including two attorneys) to be deposed concerning the legal advice Bankers Trust had received concerning the defense and settlement of the WMI action. Relying on *DH Holdings Corp. v Marconi Corp. plc* (10 Misc 3d 530 [Sup Ct, NY County 2005]), Tri-Links argued that Bankers Trust had waived attorney-client privilege as to the legal advice it received in connection with the WMI action by commencing the instant indemnity action, which places at issue (at a minimum) the reasonableness of the amounts expended to defend and settle the WMI action. Bankers Trust opposed the motion on grounds to be discussed later in this opinion.

In addition to disputing whether there had been an "at issue" waiver of Bankers Trust's attorney-client privilege, the parties used the occasion of the motion to compel to thrash out their arguments as to whether the notice of the WMI action Tri-Links received prior to the settlement was sufficient to permit Bankers Trust to recover indemnification for the settlement without proving that it was actually liable to WMI. The parties addressed the notice issue notwithstanding that neither side had requested summary judgment on any issue or submitted an affidavit of fact.

In granting the motion to compel, Supreme Court first opined—notwithstanding the absence, to reiterate, of any motion for summary judgment—that Bankers Trust had "failed to establish that it adequately notified [Tri-Links] of its intent to seek indemnification and to tender the opportunity to defend."[4] Although not spelled out in the decision, the implication of this finding on the notice issue, if upheld, would be to require Bank-

---

4. This conclusion apparently was based solely on the documentary evidence in the record and the arguments of counsel. The discussion of the notice issue in the court's decision makes no reference to any deposition testimony, and, to reiterate, neither side had submitted a fact affidavit.

ers Trust to prove its own liability to WMI in order to prevail on its claim for indemnification for the settlement. Then, following *DH Holdings*, Supreme Court found that an "at issue" waiver of Bankers Trust's attorney-client privilege in the WMI action had been established. The court found that Bankers Trust had placed the legal advice it received in the WMI action at issue, not only by commencing the instant indemnification action, but also through two brief responses a Bankers Trust executive, Mark Cohen, gave at his deposition in this matter. We now reverse.

At the outset, we observe that Supreme Court's discussion of the merits of the notice issue—which, although not reflected in the paragraphs constituting the court's order, appears to have been intended to resolve that issue as a matter of law for the remainder of the case—was not necessary on what was, after all, merely a discovery motion. CPLR 3212 does not authorize a court to grant summary judgment on its own motion, and CPLR 3124, the provision under which Tri-Links was moving, does not provide for converting a discovery motion to one for summary judgment (*cf.* CPLR 3211 [c] [on a motion to dismiss, "the court, *after adequate notice to the parties*, may treat the motion as a motion for summary judgment" (emphasis added)]). Here, the court sought to resolve the issue of the sufficiency of the presettlement notice to Tri-Links of the WMI action without statutory authority and without giving the parties forewarning that the issue was about to be decided. This deprived the parties of the opportunity either to object to the court's proposed course or to place before the court any material evidence (including affidavits by witnesses with knowledge of the relevant facts) not previously made part of the record. That the parties discussed the notice issue in their memoranda of law, and submitted some (but not necessarily all) relevant documentary evidence, did not, without more, give the court warrant to resolve a substantive issue, on the merits and as a matter of law, on a discovery motion. In sum, the notice issue remains open.[5]

***

**5.** Although this appeal is not the occasion for a final resolution of the notice issue, we observe that Bankers Trust raises a serious question as to the correctness of Supreme Court's evident view that Bankers Trust, in notifying Tri-Links of the WMI action, was required both to expressly state "its intent to seek indemnification" and "to tender the opportunity to defend." Regarding the supposed requirement of "tender" of the defense of the action, we note that no such "tender" is required by the DIP Agreement, and, moreover,

*(n. cont'd)*

Supreme Court presumably addressed the notice issue because it believed that the resolution of that issue was necessary to decide the issue directly raised by Tri-Links' discovery motion, the latter issue being whether Bankers Trust had placed the legal advice it received in the WMI action at issue in this indemnity action. As previously noted, in the event it is ultimately determined that Tri-Links did not receive adequate notice of the WMI action prior to the settlement, Bankers Trust will have to prove, not only that the amounts it expended in defending and settling the WMI action were reasonable, but also that it would have been held liable if the WMI action had been litigated to judgment (*see Feuer v Menkes Feuer, Inc.*, 8 AD2d 294, 299 [1959] [an indemnitee who does not notify its indemnitor of an action subject to the indemnity obligation may recover indemnification for settling the action only if it is "establish(ed) that (the indemnitee) would have been held liable and that there was no good defense to the liability"]). However, as discussed below, even if Bankers Trust has placed at issue the question of its actual liability to WMI, that would not constitute a waiver of attorney-client privilege as to the legal advice it received in the WMI action. Nor, as also more fully explained below, does such a waiver arise from the existence of issues as to the good faith and reasonableness of the settlement with WMI, or as to the reasonableness of the defense costs incurred in the WMI action. Accordingly, the motion to compel should have been denied.[6]

"At issue" waiver of privilege occurs where a party affirmatively places the subject matter of its own privileged communication at issue in litigation, so that invasion of the privilege is required to determine the validity of a claim or defense of the party asserting the privilege, and application of the privilege would deprive the adversary of vital information (*Credit*

---

that Tri-Links (which was of diverse citizenship from WMI) presumably would have been able to intervene in the WMI action whether or not the defense of that action was tendered to it (*see* Fed Rules Civ Pro rule 24). In addition, Supreme Court, as part of its analysis of the notice issue, noted the existence of "a question as to whether Banker's trust [*sic*] was sued in its individual capacity" or in its capacity as agent for the DIP lending group. As with the notice issue, since the motion giving rise to this appeal sought to compel discovery and the parties were not notified that summary judgment was in the offing, Supreme Court's decision cannot be deemed to resolve the issue of the capacity in which Bankers Trust was sued in the WMI action.

6. We note that Tri-Links apparently does not dispute that, absent a waiver, the evidence in question would be protected by the attorney-client privilege, the work-product doctrine, or both.

*Suisse First Boston v Utrecht-America Fin. Co.*, 27 AD3d 253, 254 [2006], citing *Jakobleff v Cerrato, Sweeney & Cohn*, 97 AD2d 834, 835 [1983]; *see also Arkwright Mut. Ins. Co. v National Union Fire Ins. Co. of Pittsburgh, Pa.*, 1994 WL 510043, *11 [SD NY, Sept. 16, 1994] ["at issue" waiver occurs where the party asserting privilege performs an "affirmative act" that "put(s) the protected information at issue by making it relevant to the case" under circumstances where "application of the privilege would have denied the opposing party access to information vital to his defense"]; *Chase Manhattan Bank N.A. v Drysdale Sec. Corp.*, 587 F Supp 57, 58 [SD NY 1984] [same]).

Of course, that a privileged communication contains information relevant to issues the parties are litigating does not, without more, place the contents of the privileged communication itself "at issue" in the lawsuit; if that were the case, a privilege would have little effect (*see Long Is. Light. Co. v Allianz Underwriters Ins. Co.*, 301 AD2d 23, 33 [2002] ["That the Report may contain information relevant to the issue of timeliness of notice does not mean that the Report itself is at issue so as to waive any attorney-client privilege attaching thereto"]). Rather, "at issue" waiver occurs "when the party has asserted a claim or defense that he intends to prove by use of the privileged materials" (*North Riv. Ins. Co. v Columbia Cas. Co.*, 1995 WL 5792, *6, 1995 US Dist LEXIS 53, *17 [SD NY 1995] [citations omitted]; *see also Manufacturers & Traders Trust Co. v Servotronics, Inc.*, 132 AD2d 392, 397 [1987] [no "at issue" waiver where the party asserting privilege "does not need the privileged documents to sustain its cause of action"]). An example of an affirmative act that does constitute "at issue" waiver of privilege is a party's "assert[ing] as an affirmative defense [its] reliance upon the advice of counsel" (*Village Bd. of Vil. of Pleasantville v Rattner*, 130 AD2d 654, 655 [1987]). "Moreover, selective disclosure is not permitted as a party may not rely on the protection of the privilege regarding damaging communications while disclosing other self-serving communications" (*id.*; *see also Orco Bank v Proteinas Del Pacifico*, 179 AD2d 390, 390 [1992] [attorney-client privilege was waived by client's "selective disclosure" of legal advice]).

In this case, it is undisputed that Bankers Trust, by suing to obtain indemnification for the WMI action, has, at a minimum, placed at issue the reasonableness of the amounts it spent on the defense of that matter and of the amount it paid WMI in settlement (*see Gray Mfg. Co. v Pathe Indus.*, 33 AD2d 739

[1969], *affd* 26 NY2d 1045 [1970]; *Feuer*, 8 AD2d at 299). The need to determine the reasonableness of the amounts Bankers Trust spent to defend and settle the WMI action does not, however, place at issue the legal advice Bankers Trust received from its attorneys in that litigation, those attorneys' work product, or their private mental impressions, conclusions, opinions or legal theories. Bankers Trust has not premised its claims for contractual and common-law indemnity on the legal advice it received in the WMI action, nor has Bankers Trust made any self-serving, selective disclosure of any protected material.[7] Further, Bankers Trust forthrightly states that it will not use privileged material or attorney work product to establish the reasonableness of its defense and settlement of the WMI action. Instead, Bankers Trust states that it will rely on evidence from the 120 boxes of nonprivileged documents it has already produced to Tri-Links in this action, including (among other material):

> (1) the unredacted time records and invoices of Bankers Trust's attorneys in New York, Delaware and Kentucky for the work they performed in the WMI action;

> (2) all documents filed in court in the WMI action, and all decisions of the courts presiding over that case;

> (3) all correspondence exchanged among the parties and concerning the WMI action, all third-party document productions in that action, and transcripts of all depositions taken therein; and

> (4) reports by experts retained by the opposing sides in the WMI action assessing the amount of damages that potentially could be awarded.

We agree with Bankers Trust that the foregoing mass of nonprivileged material provides a more-than-ample basis for the parties to litigate the reasonableness—an objective standard—of Bankers Trust's decision to settle the WMI action rather than take the risk of going to trial; of the amount it paid to settle the case; and of the amount it spent on its defense. Indeed, Tri-Links' Director of Litigation testified at her deposition that, based on Tri-Links' review of the nonprivileged documents cur-

---

7. We address below Tri-Links' contentions concerning certain deposition testimony by Bankers Trust executive Mark Cohen.

rently in its possession, Tri-Links has already determined that both the settlement of the WMI action and the defense costs incurred therein were unreasonable (*see Credit Suisse First Boston*, 27 AD3d at 254 [no need to invade privilege where "there would be sufficient available means of discovery to defendants against the claim"]; *Long Is. Light. Co.*, 301 AD2d at 33 [no need to invade privilege where relevant information was "available from numerous nonprivileged sources"]). Thus, the application of the attorney-client privilege and work-product doctrine will not "deprive [Tri-Links] of vital information" (*Credit Suisse First Boston*, 27 AD3d at 254, quoting *Jakobleff*, 97 AD2d at 835).

In sum, Bankers Trust's commencement of this indemnity action does not, in itself, imply an "at issue" waiver of the protection of the attorney-client privilege or the work-product doctrine for documents or witness testimony concerning the defense and settlement of the WMI action. We note that other courts, in cases presenting similar issues of alleged "at issue" waiver of privilege in actions seeking indemnity for the costs of prior litigation, have reached conclusions consistent with ours (*see Occidental Chem. Corp. v Hartford Acc. & Indem. Co.*, 184 AD2d 1038, 1039 [1992] [in suit to recover indemnity for the costs of prior litigation, there was no waiver of privilege under "issue injection theory" as to privileged material generated in the underlying actions]; *Bovis Lend Lease, LMB, Inc. v Seasons Contr. Corp.*, 2002 WL 31729693, *16, 2002 US Dist LEXIS 23322, *47 [SD NY, Dec. 5, 2002] ["The Court does not accept . . . that merely asserting a claim for indemnification of defense costs should vitiate the attorney-client privilege with respect to all aspects of a client's defense"]).

For the same reason that no waiver of privilege is implied by Bankers Trust's commencement of a lawsuit in which it must prove that its settlement of the WMI action was reasonable, no such waiver would be implied in the event it is ultimately determined that Bankers Trust must also prove its own liability to WMI.[8] Whether the issue is the reasonableness of the decision to settle or actual liability, Bankers Trust has declared that it will not rely on any privileged or work-product material to

---

**8.** Again, whether Bankers Trust was actually liable to Tri-Links would be at issue in the instant case only if it is found that Tri-Links did not receive adequate notice of the WMI action before it was settled. As previously stated, this appeal does not present an occasion for us to consider the merits of the notice issue.

prove its case. Further, the previously described massive record of nonprivileged material available to Tri-Links—the same record on which the liability issue would have been decided in the WMI action had it proceeded to judgment—will certainly suffice as a basis for determining whether or not Bankers Trust was actually liable to WMI, should such a determination be required.

Tri-Links argues that it is entitled to inquire into the advice and opinions of Bankers Trust's attorneys for the purpose of determining whether Bankers Trust settled the WMI action "in good faith," as alleged in the complaint. Insofar as Tri-Links is making the point that it can be required to indemnify Bankers Trust only for a settlement that was made in good faith, Tri-Links is clearly correct (see CIGNA Corp. v Lincoln Natl. Corp., 6 AD3d 298, 299 [2004] [indemnitor was "bound by the settlement made by (indemnitee) to the extent that it was reasonable and *entered into in good faith*" (emphasis added)]; see also Shihab v Bank of N.Y., 211 AD2d 430, 431 [1995]; Gray Mfg., 33 AD2d at 739; Feuer, 8 AD2d at 299). The good faith requirement does not, however, give Tri-Links warrant to invade Bankers Trust's attorney-client privilege. To reiterate, Bankers Trust has not placed its attorneys' legal advice or work product at issue, and the reasonableness of its settlement with WMI can be determined on the basis of the extensive nonprivileged documentary record already available. Furthermore, Tri-Links does not suggest any specific grounds to suspect that Bankers Trust entered into the settlement in bad faith, or (assuming grounds for such suspicion existed) to believe that invasion of the attorney-client privilege would be the only way to lay bare such suspected bad faith.[9] If the privilege could be deemed waived by nothing more than the theoretical possibility of an issue concerning the settlement's good faith (and that *is* all that Tri-Links offers), a similar waiver would have to be implied in every case in which the bad faith of the plaintiff would constitute a defense. A result that would lead to a finding of waiver in such a large number of cases is disfavored (see Bank of N.Y. v River Terrace Assoc., LLC, 23 AD3d 308, 311 [2005] [bank suing to be indemnified for attorneys' fees incurred as agent for other banks did not waive attorney-client privilege by alleging that "it had

---

**9.** In this regard, we observe that it is difficult to see how Bankers Trust could prove its good faith other than by establishing the objective reasonableness of the settlement. Certainly, it would make little sense to require Bankers Trust to prove the absence of its own bad faith, i.e., to prove a negative. Tri-Links does not articulate any specific grounds for reasonable suspicion that the settlement was tainted by bad faith.

neither been grossly negligent nor engaged in willful misconduct"]).[10]

Tri-Links further argues that, even if Bankers Trust did not waive its attorney-client privilege as to the WMI action simply by commencing a lawsuit seeking indemnification for the costs of that litigation, such a waiver was effected by certain deposition testimony given by Mark Cohen, the Bankers Trust managing director who approved the settlement with WMI. This argument is based on the following excerpt from the transcript of Cohen's deposition:

"Q: What factors did you consider in approving the settlement of the WMI action?

"MR. O'HARE [Bankers Trust's counsel]: Objection to form and objection to the extent it calls for the witness to divulge any attorney-client communications or work product.

"A: And I'm afraid that a discussion of that analysis would involve discussion of advice from attorneys.

"Q: Did you rely on the advice of counsel in determining whether or not to approve in determining whether to approve [sic] the settlement of the WMI action?

"A: Yes."

Supreme Court accepted Tri-Links' argument that the foregoing testimony constituted a waiver of privilege, characterizing it as "an instance of a plaintiff using its privilege as a sword and shield"—i.e., a self-serving partial disclosure of legal advice—"thereby completely preventing defendants from discovering or testing the rationale for the settlement." We disagree.

In the short excerpt of his testimony at issue, Cohen neither sought to justify the decision to settle the WMI action on the ground that it was based on the advice of counsel, nor did he

10. *See also Bovis Lend Lease*, 2002 WL 31729693, *17, 2002 US Dist LEXIS 23322, *50-51 (in litigation by insurer to recover from coinsurer half the costs of defending and settling an underlying personal injury claim, a potential issue as to the good faith of the settlement did not give rise to a waiver of attorney-client privilege); *Arkwright Mut. Ins.*, 1994 WL 510043, *13 (in an action for indemnity by an insurer against its reinsurer, a potential issue as to the good faith of the insurer's adjustment of the underlying claim and the settlement of a related lawsuit did not make "the *content* of legal advice received by [the insurer] . . . directly relevant to either [the insurer's] claims or [the reinsurer's] defenses").

divulge the contents of any of the advice Bankers Trust received from its counsel. Cohen simply testified to the fact that, in deciding to settle the WMI action, Bankers Trust (not surprisingly) considered the advice of its attorneys. We have held that such testimony does not constitute a waiver of privilege (see *Soho Generation of N.Y. v Tri-City Ins. Brokers*, 236 AD2d 276, 277 [1997] ["By merely mentioning at his deposition that he had withdrawn plaintiff's claim upon the advice of counsel, plaintiff's president . . . did not waive any attorney-client privilege by placing the subject matter of counsel's advice in issue or by making selective disclosure of such advice"]; *cf. Orco Bank*, 179 AD2d at 390 [plaintiff waived attorney-client privilege when its president made "selective disclosure" of legal advice by testifying that counsel advised that "we had a good security"]). Indeed, a New York federal court has held that even deposition testimony by a company's principal that the company "worded" a letter based on the advice of counsel, and that the company "intended to rely on that advice of counsel as a defense," did not constitute a waiver of privilege, where the company's counsel subsequently "explicitly represented to the Court . . . that, despite [the principal's] deposition statement to the contrary, [the company] is not asserting nor relying on the advice of counsel defense" (*Miteva v Third Point Mgt. Co. L.L.C.*, 218 FRD 397, 397-398 [SD NY 2003]).

Here, Bankers Trust has never, either through counsel or through Cohen's testimony, stated an intention to use the advice of counsel to prove the reasonableness of the WMI settlement, and it now explicitly disclaims any such intention. Neither did Cohen's testimony selectively disclose the substance of any of the legal advice Bankers Trust received. Thus, Cohen's testimony cannot be deemed to waive the protection of attorney-client privilege or of the work-product doctrine.[11]

---

11. While Cohen's testimony did not constitute a waiver of privilege, the parties should bear in mind that Bankers Trust, to prevail on its claim to obtain indemnification for the settlement, will ultimately be required to prove the objective reasonableness of the decision to settle and the settlement amount. Further, notwithstanding that Bankers Trust is not (contrary to Supreme Court's view) absolutely required to prove what its subjective "rationale" was in deciding to settle, Tri-Links was entitled to inquire about the nature of that "rationale" if it could do so without intruding on the attorney-client privilege. We note that another Bankers Trust witness testified that the factors Bankers Trust considered in deciding to settle were "the inherent risks of a jury trial coupled with the [settlement amount] being approximately 1 percent of the claim[ed] damages."

The conclusion that emerges is that Bankers Trust did not waive the protection of the attorney-client privilege or the work-product doctrine, either by commencing this action to recover indemnity or through the testimony of the executive who approved the settlement of the underlying action.

Accordingly, the order of the Supreme Court, New York County (Richard B. Lowe, III, J.), entered March 9, 2006, which granted defendants' motion to compel disclosure, should be reversed, on the law, with costs, and the motion denied.

TOM, J.P., WILLIAMS and MALONE, JJ., concur.

Order, Supreme Court, New York County, entered March 9, 2006, reversed, on the law, with costs, and defendants' motion to compel disclosure denied.