■ NOMURA ASSET CAPITAL CORPORATION et al., Respondents, v CADWALADER, WICKERSHAM & TAFT LLP, Appellant. [880 NYS2d 617]—

Order, Supreme Court, New York County (Herman Cahn, J.), entered August 21, 2008, which, in an action for legal malpractice, inter alia, denied defendant law firm's motion to compel plaintiff's production of certain privileged attorney-client communications, unanimously affirmed, without costs.

This legal malpractice action arises from defendant's allegedly negligent advice in regard to Nomura's formation of the so-called D5 Trust, a securitized pool of 156 mortgage loans totaling $1.8 billion which closed in October 1997. The transaction was to be compliant with the Internal Revenue Code's real estate mortgage investment conduit (REMIC) regulations. In November 2000, after several of the loans experienced difficulty, the trustee of the D5 Trust sued Nomura in federal court (the Doctor's Hospital action), alleging that, contrary to defendant's advice and opinion rendered to Nomura, one of the mortgage loans to Doctor's Hospital of Hyde Park, Illinois did not comply with the REMIC regulations. Specifically, the trustee alleged breach of Nomura's warranties that such mortgage loan was REMIC qualified and that the borrower's real property had a fair market value of at least 80% of the principal amount of the mortgage loan.

Defending the position that the Doctor's Hospital loan was a qualified mortgage for REMIC purposes, Nomura successfully moved for summary judgment (*LaSalle Bank N.A. v Nomura*

*Asset Capital Corp.*, 2004 WL 2072501, 2004 US Dist LEXIS 18599 [SD NY 2004]). However, on appeal, the Second Circuit reversed in part and remanded the matter to determine whether the loan was, in fact, 80% secured (424 F3d 195 [2005]). As a result, Nomura alleges that, because of defendant's erroneous advice that such mortgage loan was REMIC qualified, it was "left with no viable alternative but to settle the Doctor's Hospital Action for approximately $67.5 million prior to trial" and seeks to recover the amount of the settlement.

We find no merit to defendant's argument that privileged materials relating to and created after commencement of the Doctor's Hospital action have been put "in issue" by this litigation and are therefore discoverable. Such argument fails to recognize that nothing that plaintiff's attorneys could have said or done in the prior lawsuit could have possibly affected plaintiff's reliance on defendant's allegedly erroneous advice given years earlier in connection with the formation of the D5 Trust. " 'At issue' waiver of [the attorney-client] privilege occurs where a party affirmatively places the subject matter of its own privileged communication at issue in litigation, so that invasion of the privilege is required to determine the validity of a claim or defense of the party asserting the privilege, and application of the privilege would deprive the adversary of vital information" (*Deutsche Bank Trust Co. of Ams. v Tri-Links Inv. Trust*, 43 AD3d 56, 63 [2007]). While any communications between plaintiff and its attorneys in the Doctor's Hospital action that evaluated defendant's prior advice in the allegedly bungled D5 Trust transaction are certainly relevant to the issue of defendant's alleged malpractice, plaintiff disavows any intention to use such communications and defendant fails to show that any such communications are necessary to either plaintiff's claim or its defense (*see id.* at 64 [relevance alone insufficient to put privileged materials "at issue"; "if that were the case, a privilege would have little effect"]; *see also Veras Inv. Partners, LLC v Akin Gump Strauss Hauer & Feld LLP*, 52 AD3d 370, 374 [2008]). Nor does the question of the reasonableness of the settlement amount that plaintiff seeks to recover, without more, put plaintiff's privileged communications with its attorneys concerning the settlement "in issue" (*Deutsche Bank*, 43 AD3d at 57). No reason appears why the reasonableness of the settlement cannot be determined with the copious materials that defendant has already received, including otherwise privileged communications, dating from before the commencement of the Doctor's Hospital action. We have considered defendant's other arguments and find them unpersuasive. Concur—Gonzalez, P.J., Mazzarelli, Andrias, Moskowitz and Renwick, JJ.