OPINION OF THE COURT
Richard A. Dollinger, J.
This unusual matrimonial-related action requires the court to venture outside the Domestic Relations Law and into uncharted depths of New York law involving the relatively new obligations of a creditor when foreclosing a marital property. The facts are undisputed. In 2008, after a year’s marriage, the husband secured a mortgage on the marital residence. He is the sole obligor on the note and mortgage, and is also the sole name on the title to the property. In 2010, the wife commenced an action for divorce and sought sole and exclusive use and possession of the marital residence. The husband agreed that the wife could live at the residence during the pendency of the divorce action provided she agreed to pay the mortgage. The wife failed to make the required payments, failed to inform her husband of her default, and never forwarded any mail from the creditor regarding the mortgage.
The creditor subsequently commenced a foreclosure action. Due to the lack of payment on the mortgage, the lender sent a notice of foreclosure to the property, dated October 4, 2011. After the action was commenced, the husband answered the foreclosure complaint, denying the material allegations and asserting an affirmative defense that the lender had failed to comply with Real Property Actions and Proceedings Law § 1304. The husband then moved to consolidate the matrimonial action and the foreclosure action under CPLR 601, arguing that both actions involved the conduct of the wife in failing to make payments on the debt. The court denied the motion in a short written opinion. Thereafter, the husband, who had failed in his efforts to negotiate a resolution with the bank, moved to compel disclosure and preclude proof at trial or, in the alternative, dismiss the action.
The husband, as the borrower, seeks to dismiss the foreclosure action because of the creditor’s noncompliance with section 1304 of the Real Property Actions and Proceedings Law. The *363 new section provides a preliminary step for any creditor seeking to recover unpaid funds in a mortgage transaction. The statute provides that the creditor must send a notice to the borrower indicating the loan is in default and offering the borrower guidance on how to avert foreclosure and seek the assistance of professional counsel. The statute states:
“Such notice shall be sent by such lender, assignee or mortgage loan servicer to the borrower, by registered or certified mail and also by first-class mail to the last known address of the borrower, and if different, to the residence that is the subject of the mortgage. Such notice shall be sent by the lender, assignee or mortgage loan servicer in a separate envelope from any other mailing or notice. Notice is considered given as of the date it is mailed.” (RPAPL 1304 [2].)[1]
During discovery, the borrower demanded that the mortgage holder produce evidence that the creditor had mailed the notices required by section 1304. The mortgage holder produced four documents:
1. a copy of the initial notice required by statute;
2. a copy of a “proof of filing statement” issued by the New York State Department of Banking, but without any certification of the statement or any affidavit from any officials of the Banking Department;
3. a copy of a second notice, dated November 1, 2011, addressed to the husband at the marital residence address; and
4. a copy of a tracking report from the United States Post Office regarding a letter allegedly sent to the borrower.
After reviewing the discovery responses, the borrower’s counsel demanded further disclosure, seeking proof that the notice of mailing had been received, whether the notice was returned as “undeliverable,” and whether the notice was sent by registered or certified mail. The mortgage holder declined to respond further, arguing that it did not possess these requested items and had no legal obligation to prepare documents that it did not possess. The borrower then filed the instant motion.
Initially, the lender argues that the borrower has not requested summary judgment or judgment dismissing the claims and hence, the only relief that the court can grant is to compel *364 further disclosure. The court notes that the borrower’s notice of motion addresses several subjects. The first requested relief is an order compelling further disclosure. The second relief sought is to “determine the issues ... to be deemed resolved in accordance with the claims of the defendant.” The notice also sought to “strike the complaint of the plaintiff.” Finally, the notice of motion includes a “general relief’ clause, seeking such “other and further relief as is just and proper.” While these claims are somewhat general in the notice of motion, the borrower’s counsel, in the opening paragraph of his affidavit, leaves no doubt about the crux of the requested relief. He states that “this affirmation is in support of a motion to dismiss this foreclosure action on the grounds that plaintiff cannot prove that it complied with the sending of ninety (90) day notices as required by RPAPL § 1304 and in compliance with RPAPL § 1306.”
In short, the bank counsel asks this court to narrowly read the notice of motion, draw an adverse inference from the lack of citations to the motion sections of the CPLR and deny the requested relief on a procedural basis. The court declines to take that step. The court acknowledges that it may not have the power to convert a simple disclosure motion into a motion for a judgment. (Deutsche Bank Trust Co. of Ams. v Tri-Links Inv. Trust, 43 AD3d 56 [1st Dept 2007] [CPLR 3212 does not authorize a court to grant summary judgment on its own motion, and CPLR 3124 does not provide for converting a discovery motion to one for summary judgment].) But, the moving party in Deutsche Bank Trust Co. of Ams. v Tri-Links Inv. Trust only sought disclosure relief. The moving party here seeks much more and has said so in the notice of motion and accompanying affidavits. To draw a contrary conclusion — and preclude hearing the merits of this motion — would require the court to ignore the legislative command that pleadings are to be liberally construed absent prejudice to an opposing party. (CPLR 3026; Advisory Comm Notes, reprinted following NY CLS, Book 4G, CPLR 3026 at 529 [CPLR 3026 was intended to discourage useless pleading attacks by placing the burden on the attacker to show prejudice as well as failure of compliance].) Notices of motion are pleadings that benefit from the “liberal reading” required under CPLR 3026. (Cabrera v Rivera, 2012 NY Slip Op 31356[U] [Sup Ct, Nassau County 2012] [notice of motion is a pleading]; Oppenheim v Mojo-Stumer Assoc. Architects, P.C., 25 Misc 3d 1222[A], 2009 NY Slip Op 52243[U] [Sup Ct, NY County 2009].) The New York courts are continually cautioned not to narrowly *365 read notices of motion. (Landmark Colony at Oyster Bay Homeowners Assn., Inc. v Town of Oyster Bay, 2010 NY Slip Op 32713[U] [Sup Ct, Nassau County 2010] [because a rigid reading of the reference to “causes of action” in the notice of motion would cause the court to address incorrectly the issues raised in plaintiffs motion and defendants’ response thereto, the court liberally interpreted the notice of motion].)
Consistent with the liberal reading rule, courts have frowned on rigid interpretations of notices of motion:
“A notice of motion must list the relief demanded and the grounds therefor (CPLR 2214 [a]). Although [i]n specifying the grounds of the motion, it does no harm to cite chapter and verse, and that may be the better practice as it clearly puts the party on notice of the grounds alleged, there is no requirement that the notice of motion list the statute or regulation that is the basis of the sanctions motion as long as some grounds are mentioned.” (Shields v Carbone, 99 AD3d 1100, 1102 [3d Dept 2012] [internal quotation marks and citations omitted] [notice of motion sufficient if the grounds for the possible imposition of relief are articulated and opposing party afforded a reasonable opportunity to be heard]; Estate of Unterweiser v Town of Hempstead, 235 AD2d 453 [2d Dept 1997] [pleadings must be liberally construed and defects ignored in the absence of prejudice].)
In this case, the notice of motion, read in conjunction with the first sentence in the borrower’s attorney’s affidavit, clearly indicates that the borrower is seeking dismissal of the pending foreclosure action. When read in this fashion, the issue of dismissal of the complaint, whether pursuant to CPLR 3211 or 3212, is procedurally before the court.
In the alternative, the “general relief’ clause easily accommodates the request for dismissal of the complaint. (See Carter v Johnson, 84 AD3d 1141, 1142 [2d Dept 2011] [“(t)he court may grant relief, pursuant to a general prayer contained in the . . . order to show cause, other than that specifically asked for, to such extent as is warranted by the facts plainly appearing on the papers on both sides”]; HCE Assoc. v 3000 Watermill Lane Realty Corp., 173 AD2d 774, 774 [1991].) In Tirado v Miller (75 AD3d 153, 158 [2d Dept 2010] [citations omitted]), the Court noted:
“General relief clauses, for ‘such other, further, or different relief,’ are often included in notices of mo *366 tion by practitioners to cover the possibility that the appropriate relief is not what the movant has specifically asked for, ‘but is close enough to enable the court to grant it’ (Siegel, Practice Commentaries, McKinney’s Cons Laws of NY, Book 7B, CPLR C2214:5). The presence of a general relief clause enables the court to grant relief that is not too dramatically unlike that which is actually sought, as long as the relief is supported by proof in the papers and the court is satisfied that no party is prejudiced.” (See also Matter of Blauman-Spindler v Blauman, 68 AD3d 1105, 1106 [2d Dept 2009] [where, as here, there is no misunderstanding or prejudice, “a court may grant relief that is warranted by the facts plainly appearing on the papers on both sides”].)
Finally, this court notes that there is no prejudice to the lender if the court considers the notice of motion liberally and evaluates the motion as one to dismiss the complaint. There is no suggestion by lender’s counsel that further disclosure or delay would produce any additional documents or attestations to be considered on the motion. Lender’s counsel suggests that there may be some witness somewhere who might be able to verify the disputed mailings, but the suggestion lacks any specifics, and such general statements are insufficient to deny the motion. (Zuckerman v City of New York, 49 NY2d 557, 562 [1980] [party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue of material fact for trial].) The suggestion, advanced by counsel, that “there may be someone out there who could” verify the mailings is no substitute for a direct assertion that “there is an identified person who can and will” verify the mailings. Lacking the latter attestation, and saddled with only the former assertion, lender’s counsel cannot show any prejudice in the court deciding this motion at this time.
For these reasons, the court declines to consider the pending application as only a discovery motion. The borrower demanded the complaint be dismissed, and this court now considers that request.
Enacted by both houses of the New York Legislature in a single day during the recent mortgage foreclosure crisis in New York and referenced as the Foreclosure Prevention, Tenant Protection and Property Maintenance Act of 2009, section 1304 *367 of the RPAPL requires mortgage holders to give borrowers an opportunity to remedy any default. Specifically, 90 days before commencing a foreclosure action, the lender must give the borrower notice to consider recasting or otherwise modifying the mortgage or taking other steps to avoid foreclosure. The legislative sponsor’s memorandum confirms this consumer-friendly design:
“The mortgage crisis of the past several years has uprooted families, devastated neighborhoods, and contributed to the collapse of our financial markets. In 2008, New York State had over 50,000 foreclosure filings — an increase of almost 30% from 2007. . . .
“This bill would build upon the reforms enacted in the 2008 legislation. In particular, this bill would . . . allow a larger population of distressed homeowners to benefit from consumer protection laws and foreclosure prevention opportunities currently available only to borrowers of ‘high-cost,’ ‘subprime’ and ‘non-traditional’ home loans ....
“This bill would expand the scope of this notice by requiring lenders, mortgage loan servicers and assignees to send the notice to distressed borrowers of all ‘home loans.’. . .
“Taken together, these changes would significantly expand the number of borrowers who would benefit from the information contained in the notice and from the 90-day time period during which the lender and the borrower may attempt to reach a mutually agreeable resolution without imminent threat of a foreclosure action. The bill will therefore help reduce the number of foreclosures in the State, while preserving the remedy of foreclosure where a settlement is not possible.” {See Senate Introducer Mem in Support, Bill Jacket, L 2009, ch 507 at 9-10 [Senator Klein].)
The statute requires that the notice be sent “by registered or certified mail and also by first-class mail to the last known address of the borrower.” The requirements are in the conjunctive: the statute requires both a registered or certified mailing and a first-class mailing of the same notice. Each notice must also be sent in a “separate envelope from any other mailing or notice.”
*368 In this case, the borrower denies that the notice was ever received. He asks the lender to provide what this court — and most other courts in New York — would acknowledge is the equivalent of an “affidavit of mailing,” a sworn statement by someone acting on behalf of the lender in which the affiant attests that the notice required by section 1304 was actually mailed on a specific date and time to the address set forth on the envelope. The lender, through an attorney’s affidavit, argues that the borrower is seeking to require the bank to generate documents that it does not have and which it is not required to produce. The bank’s counsel, by omission, acknowledges that the lender does not have any affidavit of mailing and apparently, that the lender has no witness who could attest, under oath, to the mailings as required by RPAPL 1304. Instead, the bank’s counsel argues that the court should not preclude a witness for the bank appearing at trial and testifying, based on some undisclosed business records, that the mailings were timely sent.[2]
Before reviewing the facts, two legal principles — one recent and the other greying from decades of invocation — govern this matter. First, it is undisputed that the failure to send the notices required by section 1304 permits — if not requires — dismissal of the action. (Deutsche Bank Natl. Trust Co. v Spanos, 102 AD3d 909 [2d Dept 2013]; Aurora Loan Servs., LLC v Weisblum, 85 AD3d 95 [2d Dept 2011]; Cadelrock Joint Venture, L.P. v Callender, 2013 NY Slip Op 23338[U] [Sup Ct, Kings County 2013] [proper service of the RPAPL 1304 notice containing the statutorily-mandated content is a condition precedent to the commencement of the foreclosure action, and the plaintiffs failure to show strict compliance is grounds for dismissal of the action].) The Second Department in Aurora Loan Servs., LLC v Weisblum noted the rationale behind its holding:
“Since RPAPL 1304 notice must be sent at least 90 days prior to the commencement of an anticipated foreclosure action, its manifest purpose is to aid the homeowner in an attempt to avoid litigation. The legislative history noted a typical lack of communication between distressed homeowners and their lenders prior to the commencement of litigation, leading to needless foreclosure proceedings. *369 The bill sponsor sought ‘to bridge that communication gap in order to facilitate a resolution that avoids foreclosure’ by providing a preforeclosure notice advising the borrower of ‘housing counseling services available in the borrower’s area’ and an ‘additional period of time ... to work on a resolution’ ” (85 AD3d at 107).
The second legal principle applicable here is long-standing: the common-law doctrine of presumption of regularity is still alive — and well — in New York State despite arguments to the contrary. (Quality Psychological Servs., P.C. v Hartford Ins. Co., 38 Misc 3d 1210[A], 2013 NY Slip Op 50045[U] [Civ Ct, Kings County 2013].) The rule confirmed by the Court of Appeals 80 years ago still retains its vitality: a letter or notice that is properly stamped, addressed, and mailed is presumed to be received by the addressee. (News Syndicate Co. v Gatti Paper Stock Corp., 256 NY 211 [1931]; New York N.J. Producer Dealers Coop. v Mocker, 59 AD2d 970 [3d Dept 1977].) As a corollary, a simple denial of receipt has been held insufficient to rebut this presumption. (Matter of ATM One v Landaverde, 2 NY3d 472, 478 [2004]; Countrywide Home Loans v Brown, 305 AD2d 626 [2d Dept 2003].) Recently, the New York courts have stated that in order to raise the presumption, more than a general mailing affidavit is required. The presumption of receipt may be created by either proof of actual mailing or proof of a standard office practice or procedure designed to ensure that items are properly addressed and mailed. (Residential Holding Corp. v Scottsdale Ins. Co., 286 AD2d 679 [2d Dept 2001]; Matter of Phoenix Ins. Co. v Tasch, 306 AD2d 288 [2d Dept 2003].) In contrast, affidavits that merely state that the statutorily required documents were mailed within the statutory time period have been held insufficient to establish proof of actual mailing. (Comprehensive Mental v Lumbermens Mut. Ins. Co., 4 Misc 3d 133[A], 2004 NY Slip Op 50745[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2004].) In another context, but one nonetheless relevant here, a court noted:
“The burden is on the [party obligated to provide notice] to present an affidavit of an employee who personally mailed the verification/denial, or on the other hand, an affidavit of an employee with personal knowledge of the office’s mailing practices and procedures. Such individual must describe those practices or procedures] in detail, explicitly denoting the manner in which she/he acquired the knowl *370 edge of such procedures or practices, and how a personal review of the file indicates that those procedures or practices were adhered to with respect to the processing of that particular claim.” (Quality Psychological Servs., P.C. v Hartford Ins. Co., 38 Misc 3d 1210[A], 2013 NY Slip Op 50045[U], *6; see Azriliant v Eagle Chase Assoc., 213 AD2d 573 [2d Dept 1995] [the presumption is unavailable in the absence of sufficient evidence attesting to the mailing of the letter or to the existence of an office practice geared to ensure the proper addressing or mailing of correspondence].)
Additionally, the requirement that the affidavit identify the documents mailed, detailed in mailing requirements under other statutes, is equally compelling here. As another court intoned:
“Respondents’ affidavit of mailing does not include copies of the documents mailed. The absence of any notices of default or any default orders attached to the affidavit or included elsewhere in respondents’ administrative record raises the inference that no such documents ever were generated and certainly does not support the contrary inference that they were generated and that they were the documents mailed.” (Matter of 985 Amsterdam Ave. Hous. Dev. Fund Corp. v Beddoe, 2013 NY Slip Op 31183[U], *9 [Sup Ct, NY County 2013].)
In this case, it is not enough to show that some notice was mailed to the borrower. The proof of mailing must demonstrate that the statutory notice was mailed in each instance. (Pennachio v Hermitage Ins. Co., 2013 NY Slip Op 31625[U] [Sup Ct, NY County 2013] [affidavit of mailing for each notice required].)
In order to trigger the presumption of mailing, the lender under RPAPL 1304 must provide a sworn statement that the particular document — the statutory notice — was mailed by a particular person, or that a particular process, which resulted in mailing, was uniformly and diligently followed. If that proof is established, the burden shifts to the borrower. In that regard, the final legal truism prevails: once the presumption of proper service has been established, mere denial of receipt is insufficient to rebut the presumption. (Matter of ATM One v Landaverde, 2 NY3d 472, 478 [2004]; Nassau Ins. Co. v Murray, 46 NY2d 828 [1978]; Wells Fargo Bank, NA v Edwards, 95 AD3d 692 [1st Dept 2012].)
Against that backdrop, an exploration of the lender’s proof fails to establish regularity in mailing practice or a specific *371 mailing sufficient to shift the burden of proof. There is no sworn statement from any bank official regarding the mailing. There is no sworn statement regarding the practices followed by the bank in mailing the notices under RPAPL 1304. There is no evidence on any aspect of the bank’s mailing compliance with the law. The mere production of a photocopy of the statutory notice, unsigned, generated by a computer, and addressed to the borrower, does not establish its mailing by either first-class mail or certified or return receipt mail, as the statute requires.
In the absence of direct evidence of mailing, the bank’s counsel resorts to circumstantial evidence through, initially, the printed “tracking confirmation” for the certified mailing from the post office. The proof offered is insufficient to establish proof of mailing. First, the bank’s attorney attempts to authenticate the copy of the post-office printout, yet nowhere does he attest to have any firsthand knowledge of the process or protocol for the post office. He is not qualified to provide a foundation for the court’s consideration of the printout as evidence of mailing. The copy of the printout is uncertified, and there is no accompanying attestation to justify describing it as a business record of the post office. The notice refers to a “label number,” which matches a number located on the top of an October 4, 2011 letter to defendant, but there is no sworn statement linking these two numbers or establishing their correlation. This court declines to speculate on what the tracking report means or what conclusions, if any, are to be drawn from the report. The copy of a single-page, unverified form does not create a presumption of the mailing of certified or registered notice as required in the first prong of the requirement in RPAPL 1304. Other courts have specifically declined to review unverified computer printouts to substantiate claims of mailings in compliance with regulations or statutes. (Matter of Chumbay v NYC Dept, of Bldgs., 2013 NYSlip Op 30939[U] [Sup Ct, Queens County 2013] [no affidavits of mailing have been submitted with respect to any of the documents purportedly sent to the petitioner, and the court declines the invitation to interpret a party’s computer printouts to establish mailing].)
Second, the lender seeks to establish a presumption of receipt by another somewhat unorthodox method. The bank’s counsel identifies a single-page copy of a report from the New York State Banking Department which, according to the lender’s counsel, details compliance by the lender with the requirements of RPAPL 1306. However, the lender’s counsel is not qualified *372 to authenticate the document, or even lay its foundation for consideration by the court. The document, a photocopied single page, contains the Banking Department logo and states that section 1306 of the RPAPL requires certain filings with the Banking Department.[3] The document notes that “the information below pertains to a filing submitted to the banking department” and adds that “[t]he information is presented as filed by the lender . . . .” The document shows a tracking number and a mailing date for “Mailing Date, Step One” and “Mailing Date Step Two.” The document does not indicate what was mailed on the dates specified. The document, according to its actual text, is entirely dependent on information supplied to the Banking Department by the lender. There is no suggestion in the copy of the Banking Department document that the lender is required to submit the information to the Department under oath. There is no certification by the Banking Department regarding the accuracy of the record nor any claim that it would otherwise fall within the ambit of CPLR 4518 (c).[4]
Whatever minimal value this orphan document may have elsewhere, it is not evidence of mailing the notices required by RPAPL 1304. It is simply evidence that the lender told the Banking Department that it mailed something to the borrower on the dates in question. This court will not consider this document as evidence of compliance with RPAPL 1304, and the document, as proffered to the court, does not create a presumption of mailing of the notices under the statute.
Even if the “tracking report” from the post office or the Banking Department record established the certified mailing of the section 1304 notice, there is no evidence of the second mailing required by the statute (the first-class mailing that the statute also requires as a precondition of foreclosure). The lender does produce a second letter, dated November 1, 2011, and apparently claims that this letter was also mailed to the borrower in compliance with the statute. However, there is no evidence of this first-class mailing from the post office and no affidavit of mailing from the lender or its agent. This court notes that the Appellate Division, Second Department has required an “affida *373 vit of service” to establish “proper service” of the section 1304 notices. (See Deutsche Bank Natl. Trust Co. v Spanos, 102 AD3d 909 [2d Dept 2013] [holding that without an affidavit of service, lender was not entitled to dismiss the affirmative defense of noncompliance with RPAPL 1304]; Aurora Loan Servs., LLC v Weisblum, 85 AD3d 95, 106 [2d Dept 2011].)
The second letter, even if sent first class and even if received, does not comply with the statutory requirements. The letter lacks the 14-point type as required and fails to contain the consumer guidance that the statute dictates. There is also no evidence — or even a suggestion by counsel — that the second letter was sent in “a separate envelope from any other mailing or notice” as the statute requires. (RPAPL 1304 [2].) There is no reference to housing assistance agencies or the New York State Department of Financial Services as the statute dictates. The second letter is not the notice required by RPAPL 1304 — it is simply the default letter generated by the lender and sent to the borrower. Therefore, the lender has not asserted any compliance with the “follow-up” mailing requirement of the statute. As another court noted, in nearly the exact same context:
“The plaintiff, however, did not submit proper proof of service by someone with actual knowledge that the RPAPL notice was sent by registered or certified mail and also by first-class mail to Mr. Bradiel’s last known address as required by the statute (RPAPL 1304[2]; see Wells Fargo Bank, N.A. v Barrett, 33 Misc 3d 1207(A)[,] [2011 NY Slip Op 51805(U)] [Sup Ct, Queens County 2011]). Here, the defendant denied receiving the ninety day notice and the tracking email from the US Postal Service showing a certified letter having been sent merely to Ridgewood, NY without indicating a specific address is insufficient proof of service of the ninety day notice. Further, counsel’s affirmation is not based upon personal knowledge, and thus, does not constitute proper proof of service.” (HSBC Bank USA, N.A. v Bradiel, 38 Misc 3d 1208[A], 2013 NY Slip Op 50024[U], *3 [Sup Ct, Queens County 2013].)
In this matter, there is insufficient evidence to create a presumption of proper mailing of either notice to the borrower. In the absence of an established presumption of proper mailing, the borrower’s mere denial is, as a matter of law, sufficient to rebut the claim. Under these circumstances, the borrower is entitled to dismissal of the claim. (Aurora Loan Servs., LLC v Weisblum, 85 AD3d 95, 106 [2d Dept 2011].)
*374 However, while the borrower may be entitled to dismissal for the failure of the lender to establish a condition precedent to filing the complaint, this court, in the exercise of its equitable powers in a foreclosure action, declines to do so. Instead, this court enjoins further progress on the mortgage foreclosure until the lender proves compliance with the requirements of RPAPL 1304. The lender is ordered to provide the statutory notice to the borrower (at an address to be forwarded by the borrower within five days of this order) by registered or certified mail, and the same notice by regular mail in a separate envelope. The court will then allow 90 days for the bank to discuss with the borrower a modification or restructuring of the loan, as the statute envisions.
As part of the court’s decision to not dismiss the action and instead allow the lender to achieve compliance with RPAPL 1304, this court further considers sanctions against the lender for its failure to demonstrate compliance with the consumer protection policy underlying RPAPL 1304. The 2009 amendment to RPAPL 1304 and CPLR 3408 did not contain a legislatively proscribed penalty for violations of the RPAPL. In fact, this court cannot find any judicial authority for imposing sanctions on a lender who violates the RPAPL provisions. There is abundant authority for courts imposing sanctions on lenders for violation of their duty to “negotiate in good faith” during mandated conferences under CPLR 3408. (Wells Fargo Bank, N.A. v Meyers, 108 AD3d 9 [2d Dept 2013] [while recognizing appropriate penalties nonetheless voided order imposing negotiated modification on bank].) The courts have barred lenders that violated the “good faith negotiating” principles of CPLR 3408 from collecting interest, legal fees, and expenses. (Bank of Am. N.A. v Lucido, 35 Misc 3d 1211[A], 2012 NY Slip Op 50655[U] [Sup Ct, Suffolk County 2012]; BAC Home Loans Servicing v Westervelt, 29 Misc 3d 1224[A], 2010 NY Slip Op 51992[U] [Sup Ct, Dutchess County 2010]; Wells Fargo Bank, N.A. v Hughes, 27 Misc 3d 628 [Sup Ct, Erie County 2010].) Similarly, trial courts have imposed exemplary damages against lenders for violation of CPLR 3408. (Bank of Am. N.A. v Lucido, 35 Misc 3d 1211[A], 2012 NY Slip Op 50655[U] [Sup Ct, Suffolk County 2012].) Courts have stayed the foreclosure proceedings. (Deutsche Bank Trust Co. of Am. v Davis, 32 Misc 3d 1210[A], 2011 NY Slip Op 51238[U] [Sup Ct, Kings County 2011].) Monetary sanctions pursuant to 22 NYCRR part 130 have been imposed. (Deutsche Bank Trust Co. of Am. v Davis, 32 Misc 3d *375 1210[A], 2011 NY Slip Op 51238[U] [Sup Ct, Kings County 2011]; BAC Home Loans Servicing v Westervelt, 29 Misc 3d 1224[A], 2010 NY Slip Op 51992[U] [Sup Ct, Dutchess County 2010].) Finally, in considering a penalty or other sanctions against the lender in this instance, the court notes that the regulations of the State Banking Department prohibit the lender, as a mortgage servicer, from failing to provide the homeowner with the notices required under RPAPL 1304. (See 3 NYCRR 419.14 [h].)[5]
In evaluating the appropriate response in this case, the court notes that section 10-a of chapter 507 of the Laws of 2009, which enacted changes to section 1304, does not include any direction either to the State Banking Department or the State Department of Financial Services to establish penalties for violations of the notice provisions. This lack of suggested penalties differs from the statutory language underlying CPLR 3408, which authorized the Chief Administrative Judge to evaluate penalties for failure to “engage in good faith negotiation” under that statute.[5]
[6] There is simply no legislative or regulatory guidance on a penalty to be imposed when the violations stem from noncompliance with RPAPL 1304. In the absence of legislative guidance, the court is left with its broad equitable powers that arise in a foreclosure action. These extensive powers to fashion an appropriate remedy are described by one Court as:
“In the absence of a specifically authorized sanction or remedy in the statutory scheme, the courts must employ appropriate, permissible, and authorized remedies, tailored to the circumstances of each given case. What may prove appropriate recourse in one case may be inappropriate or unauthorized under the circumstances presented in another. Accordingly, in the absence of further guidance from the legislature or the Chief Administrator of the Courts, the courts must prudently and carefully select among *376 available and authorized remedies, tailoring their application to the circumstances of the case.” (Wells Fargo Bank, N.A. v Meyers, 108 AD3d at 23.)
In considering penalties, it would seem to this court that the scope of permissible penalties condoned by the courts for violations of the “good faith negotiation requirement” in CPLR 3408 would be equally compelling when evaluating violations of the “black-and-white” notice rules set forth in RPAPL 1304. The two consumer protections in chapter 507 of the Laws of 2009— CPLR 3408 and RPAPL 1304 — serve the same beneficial purpose: “The purposes of the amendments were to allow more homeowners at risk of foreclosure to benefit from consumer protection laws and opportunities to prevent foreclosure . . . .” (Wells Fargo Bank, N.A. v Meyers, 108 AD3d at 11.) If anything, the grounds for imposing penalties for violation of RPAPL 1304 would be more compelling than the grounds under CPLR 3408. The latter contains a generalized, somewhat amorphous requirement to “negotiate in good faith”; the former contains a direct command to the lender to give certain notices to the consumer before commencing the foreclosure action.
As the record in this case indicates, the lender here had no readily available system of records to establish compliance with the consumer protection safeguards in RPAPL 1304. If the foreclosure action was dismissed, as other courts have suggested is appropriate for violations of the notice requirements, the lender can simply resend the notices required by RPAPL 1304, wait 90 days, and then pay a modest filing fee and commence a second foreclosure action, seeking to recover the interest, unpaid principal, fees and costs (and attorney’s fees), all of which have accrued since the date of the first missed payment. At the end of that process, the borrower will be no better off because he remains liable for the entire unpaid debt under the loan documents. In fact, the borrower is worse off because the amount of the debt has increased during the two-year period in which this foreclosure action has been pending, making a recasting of the mortgage more costly, if not prohibitively so. In sum, if the action was dismissed — as the borrower is entitled to — the borrower is no better off and, perhaps, even worse off because of the bank’s failure to follow the dictates of RPAPL 1304 and the bank is not harmed at all.
This court will not allow the bank to escape the consequences of its failure to follow the dictates of RPAPL 1304. In this court’s view, it is inconceivable that the legislature, having devised an advance notice system to allow borrowers to negotiate modifica *377 tions or restructuring of home loans, would simply allow the lenders “a do-over” without any penalties. The borrower, in this case, sought relief that is “just and proper.” It would hardly be “just” or “proper” for this lender to be able to restart the process without any financial consequences. Therefore, to accomplish the intention of the legislature and provide a “just and proper” relief to this homeowner, this court permanently enjoins the lender from collecting from the borrower any interest, fees, penalties or attorney’s fees due and owing on the mortgage or the underlying note from 90 days prior to the date of the filing of the compliant in this matter until the bank follows the requirements of RPAPL 1304, provides the 90-day notices as required, engages in the settlement conferences required by CPLR 3408 and moves to vacate the stay imposed by this court. To further effectuate the legislative intention to protect this consumer, any claims for any interest, fees or costs due from 90 days prior to the date of the filing of the complaint to the lender’s compliance with RPAPL 1304 and CPLR 3408 and submission of a motion to vacate the stay (the compliance period) in this case are permanently barred from collection.[7]
This court also considered, as part of its relief, an award of attorney’s fees to the borrower’s counsel. Despite the lack of compliance with the notice provisions of the RPAPL, the lender’s conduct cannot be described as “frivolous” as that term is defined in 22 NYCRR 130-1.1 (c). In the absence of a legislative recognition of attorney’s fees as an award for violation of RPAPL 1304, this court declines to make such an award.
*378 The foreclosure matter is stayed, subject to the terms of this decision.

. While the statute contains language on what types of loans are covered by the notice requirements, there is no dispute in this case that the defendant borrower was entitled to the protections of the statute.

. The bank’s counsel cannot identify any document, held by the bank, which would serve as a foundation for a witness’s verification of the disputed mailings.

. RPAPL 1306 requires the filing of pre-foreclosure notices with the Superintendent of Banks. (Vanderbilt Mtge. & Fin., Inc. v Davis, 2013 NY Slip Op 32117[U], *6 [Sup Ct, Suffolk County 2013].)

. CPLR 4518 (c) permits certain records to be admissible and those records “are prima facie evidence of the facts contained” if certified or authenticated by a department of the state. No such certification is contained in the record before the court. (CPLR 4518 [c].)

. “Servicer” means a person engaging in the servicing of mortgage loans in this state whether or not registered or required to be registered pursuant to paragraph (b-1) of subdivision (2) of Banking Law § 590 (3 NYCRR 419.1 [e]). The lender in this case would appear to be a mortgage servicer within this definition.

. While section 10-a (1) of chapter 507 of the Laws of 2009 expressly provided that the rules to be promulgated by the Chief Administrator of the Courts to govern CPLR 3408 (f) settlement conferences “may include granting additional authority to sanction the egregious behavior of a counsel or party,” no specific sanction or remedy was set forth in these rules. (Wells Fargo Bank, N.A. v Meyers, 108 AD3d 9, 18-19 [2d Dept 2013].)

. In reaching this conclusion, this court considered prohibiting the collection of any arrears on the mortgage until the date of compliance and the vacatur of the stay. However, that remedy reaches too far. Under common practice, a lender usually endures a series of missed payments — principal and interest — before the obligations under RPAPL 1304 arise and the foreclosure action is commenced. The lender can choose to wait and commence the action and the borrower’s arrears increase during the pre-litigation period. Because this inherent delay in commencing a foreclosure action is a usual practice familiar to the court and attorneys involved in foreclosure matters and because this practice is not directly impacted by the requirements of either RPAPL 1304 or CPLR 3408, the court will not require the bank to forfeit the principal and interest that accumulates before the RPAPL 1304 notice should be sent. Furthermore, the court, while suspending any payments during the court-ordered compliance period, declines to impose a forfeiture on the bank’s right to collect the principal payments due under the note and mortgage. When and if the bank complies with RPAPL 1304 and CPLR 3408, the bank may collect any principal payments due at any time under the note and mortgage. The interest, fees, costs and attorney’s fees that accrue during the compliance period are all forfeited.