OPINION OF THE COURT
George B. Ceresia, Jr., J.
The plaintiff William Tell Services, LLC (William Tell or plaintiff) and third-party defendant Joseph Ventura, the principal of William Tell, are securities brokers. Under applicable securities laws, in order to sell securities, a securities broker must be affiliated with a broker-dealer. As relevant here, until February 3, 2011, William Tell and Ventura were affiliated with an entity known as ING Financial Partners (ING Financial), a registered broker-dealer. This arrangement permitted plaintiff and Ventura to sell the financial products of ING *579 Financial. As part of the foregoing arrangement ING Financial acquired customer identification information from William Tell with regard to the customers who had purchased the former’s investment products. In addition, ING Financial exercised oversight over plaintiffs investment business with respect to compliance with securities laws.
Defendant Capital Financial Planning, LLC (Capital Financial Planning) was a competitor of William Tell, which also sold ING products. William Tell and Capital Financial, although competitors, shared office space at their place of business in Albany, New York. Defendant Todd Slingerland, a member of Capital Financial, held a Series 24 license which allowed him to supervise securities brokers with respect to compliance with securities laws. He was assigned by ING Financial to supervise William Tell and Ventura, and was given the title “Office of Supervisory Jurisdiction.” On July 13, 2010, William Tell was placed on what has been described as “heightened supervision” by ING Financial, allegedly due to customer complaints and “compliance issues.” According to Slingerland, despite heightened supervision, the plaintiff continued to fail to follow compliance procedure, additional complaints were lodged against the plaintiff, and plaintiff continued to “have a high risk profile.” As a consequence of the foregoing, on February 3, 2011, Ventura and William Tell were terminated as registered representatives of ING Financial.
Previous to this, Richard Avdoyan and Holly Roth were hired by William Tell as brokers, Roth in January 2008, and Avdoyan in July 2009. Initially they were hired as William Tell employees. Later, at Joseph Ventura’s direction, they became independent contractors. In order to perform their work they were required to be, and were, authorized by ING Financial to sell its financial products as its registered representative. According to Joseph Ventura, at the time of their hiring, each was required to sign a confidentiality agreement containing a covenant not to compete with William Tell (non-compete agreement). It is alleged by the plaintiff that in late 2010 through February 3, 2011 Slingerland successfully recruited Roth, Avdoyan and John Buff[1] to leave William Tell and join Capital Financial, despite Slingerland’s knowledge of the existence of the non-compete agree *580 ments signed by all three said individuals. It is alleged that upon their departure from plaintiff, Roth, Avdoyan and Buff violated the terms of their non-compete agreements by immediately contacting and soliciting plaintiffs customers.
The plaintiff subsequently commenced an action against the defendants for injunctive relief and damages. The plaintiff maintains that Todd Slingerland improperly caused the plaintiff and Ventura to be terminated as representatives of ING Financial in order to enable Capital Financial to acquire all of plaintiffs clients and goodwill. Plaintiff also maintains that Avdoyan and Roth wrongfully violated the terms of their non-compete agreements by contacting William Tell customers to induce them to transfer their accounts to Capital Financial.[2]
Plaintiffs complaint contains four causes of action. The first cause of action, sounding in breach of contract, alleges (as relevant here) that Avdoyan and Roth violated the terms of their non-compete agreements. The second cause of action, against the same defendants, is for breach of a fiduciary duty owed to the plaintiff. The third cause of action, against Slingerland and Capital Financial is one for tortious inference with contract, alleging that they induced Avdoyan and Roth to breach the non-compete agreements. The fourth cause of action is one for tortious interference with prospective business advantage against Slingerland and Capital Financial.
The plaintiff has made a motion to preclude the defendants from offering evidence at trial.[3]
Evidence with Regard to the Parties’ February 2, 2011 Meeting and Attorney-Client Privilege
Defendants contend that at a hastily arranged meeting held on February 2, 2011 at the law office of plaintiff’s attorney, Roth and Avdoyan were pressured into signing certain non-compete agreements with respect to information pertaining to plaintiff’s clients. The plaintiff seeks to preclude defendants from presenting any evidence with regard to what occurred during the February 2, 2011 meeting on grounds that all discussions were confidential by application of the attorney-client privilege.
*581 The attorney-client privilege exists to ensure that persons seeking legal advice will be able to confer fully and freely with an attorney, secure in the understanding that all confidences will be protected from future disclosure (see Matter of Priest v Hennessy, 51 NY2d 62, 67-68 [1980]). The privilege is not limitless, however, and not all communications are privileged (see id. at 68-69). In order to invoke the privilege there must be an attorney-client relationship and the communication must have been made in confidence for the purpose of obtaining legal advice (see id.; see also Matter of Jacqueline F., 47 NY2d 215, 219 [1979]). Only the client may waive the privilege (see CPLR 4503 [a]).
It is well settled that “[i]n order for the privilege to apply, the communication from attorney to client must be made ‘for the purpose of facilitating the rendition of legal advice or services, in the course of a professional relationship’ ” (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 377-378 [1991], quoting Rossi v Blue Cross & Blue Shield of Greater N.Y., 73 NY2d 588, 593 [1989]). The privilege does not extend to business advice, even when given by an attorney (see Matter of Stenovich v Wachtell, Lipton, Rosen & Katz, 195 Misc 2d 99, 106-107 [Sup Ct, NY County 2003]). Ordinarily, “communications made between a client and counsel which are shared with a third party generally are not privileged” (Sieger v Zak, 60 AD3d 661, 662 [2d Dept 2009], citing People v Osorio, 75 NY2d 80, 84 [1989]).
Plaintiffs submissions indicate that the purpose of the February 2, 2011 meeting was “to discuss strategy on how to move forward,” “to discuss company business” including “company-wide decisions [which involved] speaking with the company’s attorneys,” and “to solicit their suggestions concerning a new securities dealer and strategize the departure of WTS from its relationship with [Capital Financial Planning].”
In Upjohn Co. v United States (449 US 383 [1981]) the United States Supreme Court applied the attorney-client privilege to protect from disclosure communications between a law firm and low-level corporate employees. The rationale there, not shown to be applicable here, is that low-level employees might be the only employees who possess relevant information with regard to the specific legal problem at issue; and without such information, the corporate attorney would be unable to carry out her or his job in providing legal advice or services to the corporate client (see id.). For this reason, the communications were found to be insulated from disclosure under the attorney-client privilege. *582 In this instance, neither Roth nor Avdoyan have been shown to possess similar such knowledge or information. In addition, it is undisputed that they were not plaintiffs employees.
Plaintiff advances the further argument that the attorney-client relationship applied by reason that although Roth and Avdoyan were independent contractors, they were the “functional equivalent” of an employee of the plaintiff. As stated in Export-Import Bank of the United States v Asia Pulp & Paper Co., Ltd. (232 FRD 103, 113 [SD NY 2005]):
“To determine whether a consultant should be considered the functional equivalent of an employee, courts look to whether the consultant had primary responsibility for a key corporate job, . . . whether there was a continuous and close working relationship between the consultant and the company’s principals on matters critical to the company’s position in litigation, . . . and whether the consultant is likely to possess information possessed by no one else at the company” (id. at 113, citing In re Bieter Co., 16 F3d 929, 933-938 [8th Cir 1994]; In re Copper Mkt. Antitrust Litig., 200 FRD 213, 219 [SD NY 2001]; Ross v UKI Ltd., 2004 WL 67221, *4, 2004 US Dist LEXIS 483, *11-13 [SD NY, Jan. 15, 2004, No. 02 Civ 9297 (WHP/JCF)]).
The functional equivalent test has been applied to uphold application of the attorney-client privilege where an outside consultant plays such a major role in the corporate decision-making process, that the consultant’s communication with the corporate attorney is essential for the corporate attorney to properly advise the corporate client (see e.g. McCaugherty v Siffermann, 132 FRD 234, 238-239 [ND CA 1990]). Here, no such showing has been made.
As it stands, neither Roth nor Avdoyan have been shown to have been either an employee of the plaintiff, or the functional equivalent thereof on February 2, 2011. Thus, any discussions had between Ventura and his attorney in their presence would not be confidential under the attorney-client privilege.
Apart from the foregoing, the court is also mindful that an implied waiver will result where a client places the subject matter of the communication in issue or where invasion of the privilege application is necessary to test the validity of a client’s claim or defense (see Jakobleff v Cerrato, Sweeney & Cohn, 97 AD2d 834, 835 [2d Dept 1983]; New York TRW Tit. Ins. v Wade’s Can. Inn & Cocktail Lounge, 225 AD2d 863, 864 [3d Dept *583 1996]). As set forth in Deutsche Bank Trust Co. of Ams. v Tri-Links Inv. Trust (43 AD3d 56 [1st Dept 2007]):
“ ‘At issue’ waiver of privilege occurs where a party affirmatively places the subject matter of its own privileged communication at issue in litigation, so that invasion of the privilege is required to determine the validity of a claim or defense of the party asserting the privilege, and application of the privilege would deprive the adversary of vital information (Credit Suisse First Boston v Utrecht-America Fin. Co., 27 AD3d 253, 254 [2006], citing Jakobleff v Cerrato, Sweeney & Cohn, 97 AD2d 834, 835 [1983]; see also Arkwright Mut. Ins. Co. v National Union Fire Ins. Co. of Pittsburgh, Pa., 1994 WL 510043, *11 [SD NY, Sept. 16, 1994] [‘at issue’ waiver occurs where the party asserting privilege performs an ‘affirmative act’ that ‘put(s) the protected information at issue by making it relevant to the case’ under circumstances where ‘application of the privilege would have denied the opposing party access to information vital to his defense’]; Chase Manhattan Bank N.A. v Drysdale Sec. Corp., 587 F Supp 57, 58 [SD NY, 1984] [same]).” (Deutsche Bank Trust Co. of Ams. v Tri-Links Inv. Trust at 63-64.)
Although plaintiff’s complaint alleges that Roth and Avdoyan signed the non-compete agreements in January 2011 (specifically on Jan. 10, 2011 and Jan. 5, 2011 respectively), Roth and Avdoyan maintain that the agreements were signed during the meeting with Ventura held in the office of Smith Hoke, PLLC on February 2, 2011. The facts and circumstances surrounding the execution of the agreements are at issue, including the date when they were signed, whether or not the plaintiff, through disparate bargaining power, exerted pressure on Roth and Avdoyan to sign them, whether they were procured by fraud, and whether the agreements were supported by adequate consideration. In the court’s view, there has been an implied or “at issue” waiver of the attorney-client privilege.
For all of the foregoing reasons the court finds that the attorney-client privilege was waived with regard to any conversations between Ventura and members of the law firm of Smith Hoke, PLLC made in the presence of Roth and Avdoyan on February 2, 2011. For this reason, preclusion must be denied.
Evidence Regarding Ventura’s Arbitration Proceedings
The Financial Industry Regulatory Authority (FINRA) is organized, in part, to provide protection to private securities *584 investors. As relevant here, it arbitrates disputes between investors, brokerage firms and individual brokers with regard to the alleged violation of FINRA regulations. It appears that third-party defendant Ventura has had complaints lodged against him in proceedings before FINRA. The plaintiff indicates that the defendants intend, at trial, to introduce evidence of such proceedings, as well as evidence of prior lawsuits against Ventura. Plaintiff, citing People v Molineux (168 NY 264 [1901]) and its progeny, maintains that the foregoing, and the alleged underlying “bad acts” have no relevancy to plaintiffs complaint; and their admission into evidence at trial would be highly prejudicial. In support of plaintiffs argument Ventura indicates that he has never been found guilty of wrongdoing in any proceeding or action.
Plaintiffs complaint contains the following allegations:
“38. On or about February 3, 2011, Todd Slingerland and [Capital Financial Planning] ended all business relationships with WTS, and in an orchestrated plan, ING terminated Joseph Ventura’s ability to continue as a financial representative selling securities through ING. Members and employees of WTS were escorted from the property without their personal property, including their physical files.
“39. Upon information and belief, the termination of this relationship was requested by Todd Slingerland, who as a managing member of [Capital Financial Planning] sought to recruit Holly Roth and Richard Avdoyan and exploit WTS goodwill, telephone number and confidential client information for the benefit of [Capital Financial Planning] and to the extreme detriment of WTS.
“40. Simultaneously, Defendants Holly Roth, John Buff and Richard Avdoyan began soliciting the very clients that they contractually agreed to refrain from soliciting using all of the goodwill and advantage they had been given access to during their time servicing WTS’s clients.
“41. In addition, with the assistance of Todd Slingerland, Holly Roth, John Buff and Richard Avdoyan began utilizing WTS’s phone number to respond to telephone calls from clients giving the impression that they were continuing to do business with WTS when in actuality they were transacting business with the Defendants in their new capacities with [Capital Financial Planning].”
*585 It therefore appears that plaintiff has raised a significant issue with regard to whether the plaintiff was terminated as a registered representative of ING Financial in order to enable Capital Financial Planning to acquire plaintiffs customers. Notably, the foregoing allegations have been denied by the defendants. Defendants Slingerland and Capital Financial Planning take the position that plaintiff and Ventura were discharged for cause by reason, inter alia, of their violation of FINRA rules. Because the plaintiff has raised an issue with regard to the underlying motive behind its termination as a registered representative of ING, defendants Slingerland and Capital Financial should be afforded an opportunity to present evidence with regard to the reasons why plaintiff was terminated.
The court concludes that the motion must be denied.
Email Not Previously Produced
In an affidavit sworn to January 24, 2013 Avdoyan described the events which occurred on February 2, 2011. He recounted that on the morning of that day Ventura drove to Avdoyan’s house, picked him up, and then drove him to Ventura’s house. As relevant here, after bringing Avdoyan into the kitchen, Ventura went elsewhere in the house and returned with a blue folder, which he gave to Avdoyan. Avdoyan indicates that the blue folder contained copies of email not addressed to plaintiff or Ventura, but rather being internal email between Todd Slingerland, Clare Mertz (an executive vice-president of Capital Financial Planning) and the ING home office. During document discovery in the instant action, in response to plaintiffs demand, Avdoyan produced five items of email. Avdoyan testified at a pretrial deposition that two of the five emails were in the blue folder which he reviewed on the morning of February 2, 2011. At the same pretrial deposition, Avdoyan testified that there had been other items of email in the blue folder which Avdoyan believed had been improperly obtained by Ventura, however, the defendants never produced any other such email. Subsequent to this, the plaintiff requested production of documents from ING. Included in the documents produced by ING were additional items of email which originated from ING, addressed to one or more of the defendants. Because this email was never produced by the defendants during document discovery, plaintiff seeks an order precluding the defendants from relying upon any email not so produced, and precluding the defendants from offering any testimony regarding documents that were allegedly surreptitiously acquired by Ventura.
*586 As pointed out by the attorney for the defendants, plaintiff has not identified the specific documents which were wrongfully or intentionally withheld by the defendants. Defendants argue that this circumstance prevents the defendants from addressing the issue and/or providing an explanation. The court agrees, and concludes that the motion must be denied.
Preclusion of Testimony of John Buff
Plaintiff seeks to preclude any testimony from John Buff by reason that he refused to answer questions during his pretrial deposition by invoking his Fifth Amendment right against self-incrimination. Plaintiff advances the argument that Buff should not be permitted to selectively use the Fifth Amendment as both a sword and a shield. As noted, the instant action was recently settled with regard to claims against defendant John Buff. In this respect there is no longer any danger that Buff will be able to selectively use the Fifth Amendment as a sword and a shield. The court finds that the motion must be denied as moot. The court makes no determination here with regard to whether Buff might otherwise be called as a witness to give testimony at trial on behalf of any of the remaining parties. That issue should await trial.
The court has reviewed and considered the remaining arguments and contentions of the plaintiff and found them to be without merit. In view of all of the foregoing, the court concludes that plaintiffs motion for preclusion must be denied.
Accordingly it is ordered, that plaintiffs motion to preclude is denied.

. Defendant John Buff is a former broker of William Tell who joined William Tell in November 2009. He was terminated on January 20, 2011 when he declined to sign a non-compete agreement. The action as to John Buff was recently settled and discontinued.

. The foregoing facts are taken, primarily, from papers submitted on a prior motion for summary judgment.

. The trial was scheduled to commence on July 21, 2014. Due to an unrelated development, the trial was removed from the calendar for July 21, 2014 on consent, to be rescheduled in the very near future.